BEHN, RECURRENTE, *v.* EL REGISTRADOR DE LA PROPIEDAD, RECURRIDO.

Recurso gubernativo contra nota del Registrador de la Propiedad de San Juan, Sección 1ª., denegando la inscripción de una escritura de arrendamiento.

No. 197.—Resuelto en diciembre 17, 1914.

RECURSO GUBERNATIVO INTERPUESTO DENTRO DEL TÉRMINO LEGAL—COMPUTACIÓN DE DICHO TÉRMINO—PRESENTACIÓN DEL ALEGATO DEL RECURRENTE.—El término de 20 días que marca la sección 3 de la ley sobre recursos contra las resoluciones de los registradores de la propiedad, de marzo 1, 1902, sección 801 de los Estatutos Revisados de Puerto Rico, empieza a contarse desde la notificación de la nota del registrador, y el recurso se entiende interpuesto cuando el recurrente radica en este tribunal los documentos presentados al registro con el escrito interponiendo el recurso, y no cuando radica su alegato en apoyo del recurso.

ID.—NOTA DEL REGISTRADOR CONSENTIDA POR LA PARTE—CUESTIONES QUE PUEDEN DISCUTIRSE EN UN RECURSO CONTRA NOTA DENEGATORIA DE INSCRIPCIÓN POR NO HABERSE SUBSANADO LOS DEFECTOS SEÑALADOS EN UNA NOTA CONSENTIDA.—Cuando, como en el caso de autos, se presenta al registro de la propiedad un documento para su inscripción y es ésta denegada y la parte no recurre contra dicha nota dentro del término legal, se entiende que la consiente, y si dicha parte presenta de nuevo el documento acompañado de otros que a su juicio subsana los defectos señalados por el registrador, en el caso de que el registrador insista en su negativa, la parte interesada podrá recurrir para ante este tribunal, pero en el recurso sólo podrá discutirse si los defectos señalados en la primera nota consentida fueron o nó debidamente subsanados.

DEFECTOS SUBSANABLES—ARRENDAMIENTO DE MANGLARES POR EL COMISIONADO DEL INTERIOR—SUBSANACIÓN DE LOS DEFECTOS.—Examinados en el presente recurso los nuevos documentos presentados al registrador, *se resolvió* que habían quedado subsanados los defectos subsanables marcados con las letras A, B, C, D y E en la nota consentida de 15 de junio de 1914.

Los hechos están expresados en la opinión.

Abogado del recurrente: *Sr. Herminio Díaz Navarro.*

El Registrador Sr. José S. Belaval compareció por escrito en nombre propio.

EL JUEZ ASOCIADO SR. DEL TORO emitió la opinión del tribunal.

El presente es un recurso gubernativo interpuesto contra la negativa del Registrador de la Propiedad de San Juan, Sección Primera, a inscribir cierto contrato de arrendamiento

celebrado entre el Comisionado del Interior de Puerto Rico y Hernand Behn.

Aparece de los documentos remitidos a este Tribunal Supremo, que el 21 de mayo de 1914 comparecieron ante el Notario Público Roberto H. Todd, Ernest S. Wheeler, Sub-comisionado del Interior, actuando como Comisionado por encontrarse vacante dicho cargo, y Hernand Behn, y elevaron a escritura pública y ratificaron un contrato de arrendamiento que habían celebrado el 12 de noviembre de 1913.

La propiedad arrendada consiste en una parcela de manglares, perteneciente al Pueblo de Puerto Rico, situada en la Bahía de San Juan, al este del Muelle de San Antonio. Los términos y condiciones del contrato son, en resumen, los siguientes:

1. Treinta años de plazo contados a partir del 12 de noviembre de 1913, sin que el arrendatario, sus sucesores o cesionarios, tengan que pagar canon de arrendamiento, siempre que cumplan con las otras condiciones que se les imponen;

2, el arrendatario deberá construir una línea de muelles o malecón, dragar el canal y rellenar el terreno, en la forma en que se especifica, gastando en las referidas obras una suma no menor de $105,000 moneda americana;

3, dicho arrendatario comenzará los trabajos de mejoras especificados, dentro de cuatro meses de la fecha del contrato, y concluirá dichas mejoras dentro de dos años de dicha fecha, "siendo entendido y convenido que las referidas condiciones con respecto a las fechas de empezar y completar dicho trabajo quedan substituídas por las condiciones enumeradas en el párrafo número uno (1) de las *condiciones suspensivas del arrendamiento,* copia de las cuales se hizo parte de la proposición original sometida por el referido arrendatario para el arrendamiento del terreno en cuestión."

4, el arrendamiento no empezará a tener efecto hasta haberse completado por el arrendatario las obras especificadas y hasta que éstas sean aceptadas por la Junta del Puerto de San Juan;

5, todo el terreno rellenado, el malecón y el dragado, quedarán de la propiedad del Gobierno Insular, libre de gastos, a la terminación del contrato;

6, los edificios que construya sobre el terreno el arrendatario, serán de su propiedad siempre que los retire dentro de los cuatro meses siguientes al vencimiento del contrato. De otro modo quedarán de la propiedad del Gobierno Insular, libre de gastos;

7, la propiedad arrendada y sus mejoras quedarán exentas del pago de contribución, pero todas las demás propiedades sobre el terreno rellenado estarán sujetas al dicho pago;

8, el arrendatario hará todas las reparaciones que le ordene la Junta del Puerto de San Juan y entregará al Gobierno Insular la propiedad arrendada en buenas condiciones;

9, dicho arrendatario, construirá y mantendrá durante la vida del arrendamiento un malecón permanente en el frente del agua del terreno arrendado, con sujeción a las condiciones que se especifican, quedando además estipulado y convenido que "en lo que se refiere a aquella parte de la propiedad arrendada que da frente al Canal de San Antonio, el referido arrendatario construirá un malecón temporal, siendo entendido y convenido que dicho arrendatario podrá, si así quisiese hacerlo, hacer una proposición suplementaria al Consejo Ejecutivo de Puerto Rico, que podrá ser rechazada o aceptada a discreción del mismo, en cualquier tiempo antes de cinco años anteriores a la expiración de su arrendamiento, ofreciendo construir un malecón permanente para tomar el lugar del malecón temporal, en consideración de una extensión de los términos de este arrendamiento."

10. El arrendatario dragará y mantendrá, durante la vida del contrato, a lo largo del malecón permanente construído por él, un canal de treinta metros de ancho y de una profundidad no menor que la fijada en el mapa de "Mejoras del Puerto de San Juan."

11, el arrendatario rellenará y mantendrá la propiedad

arrendada a un nivel no menor de un metro cinco centímetros sobre la mínima marea baja;

12, el arrendatario no emprendará las obras sin antes recibir la aprobación de la Junta del Puerto de San Juan;

13, el malecón y la proyectada área de calle al final y cerca de la orilla del embarcadero, al este del Muelle de San Antonio, (plano de Mejoras del Puerto de San Juan), no serán arrendados, debiendo construirse el malecón correspondiente a dicha sección por el Gobierno Insular cuando lo crea conveniente, sin que el arrendatario pueda reclamar nada por la falta de su construcción;

14, el arrendador proporcionará al arrendatario dentro de dos años contados a partir de la fecha del contrato, "un derecho de vía que conduzca a la propiedad arrendada, en tal sitio, que dicho arrendatario pueda tener acceso razonablemente seguro y conveniente a dicha propiedad siempre que el referido derecho de vía se proporcione sobre terrenos pertenecientes al Gobierno Insular."

15. El arrendatario usará la propiedad como depósito para almacenaje de carbón, aceite, etc., y para la venta de dichos productos;

16, se concederán iguales derechos a todos los que quieran comprar los artículos almacenados, "bajo una tarifa establecida por el concesionario dependiente de las cantidades compradas;"

17, todos los barcos tendrán iguales derechos para atracar al depósito y "tomar carbón u otros productos a iguales precios, dependiente de la cantidad tomada;"

18, para atracar al muelle debe obtenerse el consentimiento del arrendatario, y

19. Los barcos del Gobierno de los Estados Unidos, en caso de emergencia, tendrán derecho de prelación, libre de gasto alguno, a usar del depósito.

Presentada la escritura pública así otorgada para su inscripción en el Registro de la Propiedad de San Juan, Sección

Primera, el registrador se negó a inscribirla por medio de la nota que a continuación se transcribe:

"Denegada la inscripción del precedente documento, por los siguientes defectos:

"1. Carecer de facultades el Comisionado del Interior para celebrar un contrato de arrendamiento por más de seis años, toda vez que la Ley de la Asamblea Legislativa de Puerto Rico para autorizar el arrendamiento o venta de los manglares de la Bahía de San Juan, de 11 de marzo de 1909, no le concede expresamente esa facultad, como lo requiere el artículo 1451 del Código Civil vigente.

"2. No estar inscrito el dominio o posesión de la parcela que se pretende arrendar, a favor del arrendador, con arreglo a lo que prescribe el artículo 20 de la Ley Hipotecaria.

"3. Que la ley citada de la Asamblea Legislativa autoriza al Comisionado del Interior sólo para arrendar o vender todo o parte de los manglares, en sus secciones 1ª. y 12ª.; y el clausulado que consta en la precedente escritura ni corresponde al de un contrato de venta de la parcela a que se refiere, ni al de arrendamiento de la misma, puesto que, en cuanto a este último, no se estipula el canon, renta o precio cierto por el goce o uso de la cosa que se dice arrendada, y por tanto carece de uno de los requisitos esenciales del contrato de arrendamiento que fija el artículo 1446 del citado Código Civil vigente.

"4. No resulta expresa y claramente cumplida la condición de la sección 2ª. de la ley citada, puesto que, el arrendatario, que solamente contrae en la cláusula 2ª. de la escritura la obligación vaga e indeterminada de 'rellenar el terreno,' estipula en la subsiguiente cláusula 3ª. que las condiciones con respecto a las fechas de empezar y completar el trabajo 'quedan sustituídas por las condiciones enumeradas en las cláusulas número 1 de las "condiciones suspensivas del arrendamiento"' sin que en el documento presentado consten cuáles sean éstas.

"5. Porque la facultad de arrendar o vender una parcela de los manglares, que confiere la sección/ 12ª. de la indicada ley, está limitada al caso de que dicha venta o arrendamiento fuera conveniente por los motivos que consigna aquélla, y estos motivos no resultan de la anterior escritura.

"6. En cuanto a la servidumbre establecida en la cláusula 14ª., no está autorizado el Comisionado para constituirla, con arreglo a la ley del caso.

"7. Que la exención de contribuciones que establece la cláusula 7ª. no es la que autoriza la sección 3ª. de la expresada ley ·de 11 de marzo de 1909.

"8. El convenio comprendido en la última parte de la cláusula 9ª. de esta escritura no está autorizado por la antedicha ley de 9 de marzo de 1909.

"Y queda tomada en su lugar anotación preventiva, por el. término legal, al folio 144 del tomo 5º. de Puerta de Tierra finca No. 130, anotación letra A, en la que se consignan los siguientes defectos subsanables:

"(A) Oscuridad en ·la primera parte de la cláusula 3ª.

"(B) Que refiriéndose la escritura a, otros documentos, que contienen pactos y condiciones del· contrato a que este título se refiere, no se insertan en el mismo ni se acompañan copias de aquéllos.

"(C) Que la ya expresada ley de 11 de marzo dispone que el Comisionado del Interior realice los contratos a que se refiere 'mediante autorización del Consejo Ejecutivo'; y no se acompaña ni se copia documento alguno que contenga dicha autorización para el referido contrato de arrendamiento, que se intenta estipular en esta escritura.

"(D) En la misma no se expresa la situación ni la cabida de la parcela que se dice arrendada.

"(E) Siendo casado el arrendatario, no consta el nombre de su esposa.  San Juan, Puerto Rico, quince de junio de mil novecientos catorce.  El Registrador (firmado) José S. Belaval."

Notificada la nota transcrita al presentante del documento, fué recogido éste, y, el 29 de julio de 1914, ambas partes contratantes comparecieron ante el Notario Público Herminio Díaz Navarro y otorgaron una escritura pública con el fin de subsanar los defectos anotados por el registrador y aclarar la anterior otorgada ante el Notario Roberto H. Todd.

En la escritura de 29 de julio se hizo constar que la finca de la cual se segregó la parcela arrendada había quedado inscrita en el registro, describiéndose debidamente la finca y la parcela, que el arrendamiento de la parcela se sacó a público remate bajo las condiciones que constan en el documento que se agrega a la escritura; que en dicho remate sólo fué licitador el Señor Behn, agregándose también a la escritura su proposición escrita; que a virtud del remate se otorgó el documento de 12 de noviembre de 1913 que se insertó íntegro y

se ratificó en la escritura de 21 de mayo de 1914; y que el contrato fué autorizado por el Consejo Ejecutivo, en sesión pública celebrada el 23 de octubre de 1913, según documento que se une de igual modo a la escritura.

Las cláusulas tercera, décima-cuarta y novena de la escritura de 21 de mayo de 1914, quedaron aclaradas en la de 29 de julio de mismo año del siguiente modo: con respecto a la tercera, que las llamadas "condiciones suspensivas del arrendamiento" eran las que constaban de un documento que se unió a la escritura y que el contenido de ese documento demostraba que el contrato de que se trata es de interés público puesto que el arrendatario se compromete a invertir una buena suma de dinero en el saneamiento de terrenos hoy inservibles, quedando luego los terrenos desecados de la propiedad del Pueblo de Puerto Rico; en cuanto a la décima-cuarta, que el derecho de paso o vía que el arrendador se compromete a facilitar al arrendatario está basado en la obligación que le impone el artículo 574 del Código Civil, toda vez que la parcela arrendada no tiene otra salida propia que por los terrenos del Pueblo de Puerto Rico que forman el resto de la finca de que aquella ha sido segregada, y con respecto a la cláusula novena, que lo hecho constar obedecía al estudio que en el Departamento del Interior se había llevado a efecto para que la obra de relleno, dragado y construcción de malecones del Puerto de San Juan quede técnicamente finalizada.

También contiene la escritura de 29 de julio de 1914 ciertas manifestaciones de las partes explicando por qué entienden que la ley de 11 de marzo de 1909 sobre arrendamiento o venta de los manglares de la Bahía de San Juan, autoriza la celebración del contrato de que se trata, y el nombre de la esposa del arrendatario.

La escritura de 21 de mayo de 1914, acompañada de la de 29 de julio del mismo año a la cual se unieron los documentos en ella especificados, se presentó de nuevo en el registro

y el registrador volvió a negar su inscripción por medio de la siguiente nota:

"No practicada la conversión de la anotación preventiva a que se refiere la precedente nota, y que se solicita en virtud de la escritura de veinte y nueve de julio último ante el Notario Don Herminio Díaz Navarro, que también se ha presentado, porque por esta escritura sólo quedan subsanados los defectos que en dicha nota se consignaron con los números 2° y 4° en su último extremo, permaneciendo subsistentes los demás, en la misma relacionados, respecto a los cuales ningún nuevo documento se aporta, limitándose el otorgante de la citada escritura a expresar meras opiniones particulares y razonamientos, que no bastan para modificar la anterior nota denegatoria, ya consentida. Y no practicada operación alguna en cuanto a los defectos subsanables que en la misma se consignan por no haberse solicitado. San Juan, P. R., 24 de agosto de 1914. El Registrador, (firmado) José S. Belaval."

Notificada esta última nota el 3 de septiembre de 1914, el arrendatario Behn, por medio de su abogado, el 23 de septiembre de 1914 archivó en la secretaría de este Tribunal Supremo un escrito estableciendo el presente recurso gubernativo, presentando luego, el 1 de octubre de 1914, un alegato en apoyo del mismo.

Dado traslado al registrador, este funcionario presentó su alegato por escrito pidiendo la desestimación del recurso, 1°., por haberse interpuesto fuera de término, y 2°., porque la nota denegatoria de la inscripción de la escritura de 21 de mayo de 1914, fué consentida y quedó por consiguiente firme.

En cuanto a la primera de las cuestiones previas suscitadas por el registrador, diremos que carece de importancia alguna. La contención del registrador se basa en el error de haber considerado la fecha del 1 de octubre en que se archivó el alegato del recurrente, como la verdadera fecha de la interposición del recurso. El recurso se interpuso el 23 de septiembre, y como la última nota del registrador se notificó el día 3 de dicho mes, el recurrente estaba dentro de los veinte días que la ley le concede para acudir en alzada a este tribunal contra la negativa del registrador. Sección 3 de la ley

sobre recursos contra las resoluciones de los registradores de la propiedad. Estatutos Revisados y Códigos de Puerto Rico de 1902, pág. 314.

En el caso de *Hernández* v. *El Registrador de la Propiedad de Aguadilla,* 14 D. P. R., 795, 798, se presentaron para su inscripción en el registro ciertas escrituras de constitución de hipoteca y cesión de la misma, negándose a inscribirlas el registrador. La parte interesada dejó transcurrir el término que la ley le concedía para acudir en alzada ante este Tribunal Supremo y presentó de nuevo las escrituras para su inscripción en el registro acompañadas de otro documento. El registrador volvió a negar la inscripción ''por observarse los mismos defectos expresados en la nota denegatoria precedente.'' La parte interesada acudió entonces a este Tribunal Supremo, y esta corte desestimó por extemporáneo el recurso en cuanto pudiera referirse a las primeras notas denegatorias de inscripción, y confirmó las segundas por estimar, de conformidad con el registrador, que no se habían subsanado los defectos consignados en las anteriores. Los considerandos de la resolución de esta corte en dicho caso, dicen así:

''*Considerando*: Que las notas del Registrador de Aguadilla denegando la inscripción de las dos escrituras de 4 de octubre de 1905 y de 10 de noviembre del mismo año fueron notificadas al presentante de los documentos en la misma fecha de aquellas notas, o sea en 22 de julio de 1908, y que la presentación de dichos documentos en la secretaría de esta Corte Suprema tuvo lugar en 18 de agosto siguiente cuando ya habían transcurrido los veinte días que para dicha presentación señala la sección 3ª. de la ley sobre recursos contra resoluciones de los registradores de la propiedad, aprobada en marzo 1º. de 1902, debiendo, por tanto, estimarse consentidas aquellas notas.

''*Considerando*: Que por lo que atañe a las notas denegatorias de inscripción de 30 de julio de 1908 contra las cuales puede estimarse interpuesto el recurso dentro del término legal de 20 días, sólo cabe discutir si el registrador incurrió o nó en error al estimar que no se habían subsanado los defectos que motivaron en 22 de julio la denegatoria de inscripción de los dos documentos aludidos, defectos que

la parte interesada no contradijo en tiempo oportuno, sino que por el contrario aceptó, constituyéndose así en el deber de subsanarlos.

"*Considerando*: Que la certificación de la declaratoria de herederos de Don Lorenzo Orfila no subsana los defectos que el registrador tuvo en cuenta al consignar las notas denegatorias de inscripción de 22 de julio de 1908, pues semejante declaratoria es documento extraño a aquellos defectos."

La doctrina establecida en el caso de Hernández fué aplicada y confirmada en el de *Barreras* v. *El Registrador,* 15 D. P. R., 556, 558, expresándose esta corte en los dos últimos considerandos de su resolución, así:

"*Considerando*: Que contra la nota denegatoria de inscripción de 19 de marzo último, que es la materia del presente recurso, pues contra ella es que Barreras Padró dirige sus alegaciones, no cabe apelación siendo como es reproducción de la nota anterior de 27 de julio de 1908 que consintió Barreras Padró.

"*Considerando*: Que en apoyo de la doctrina que dejamos expuesta viene la resolución dictada por esta Corte Suprema en 30 de noviembre de 1908 en recurso de Fabio A. Hernández contra el Registrador de la Propiedad de Aguadilla, robustecida por el fundamento de que si se permitiera la renovación incesante de anotaciones de títulos no inscritos por defectos insubsanables se impediría indefinidamente la inscripción de títulos perfectos de otras personas."

De acuerdo, pues, con nuestra misma jurisprudencia, nuestro campo de acción en este caso está limitado a examinar y a resolver si se subsanaron o nó por la parte interesada los defectos consignados por el registrador en su primera nota. Dicha primera nota fué consentida en la vía gubernativa por la parte interesada. Esta pudo acudir al Tribunal Supremo en el ámplio término que le concedía la ley. No lo hizo así, y debe ahora estar y pasar por las consecuencias de sus propios actos.

Resuelta en tal sentido la segunda y última de las cuestiones prévias suscitadas por el registrador, veamos si procede o nó la desestimación del recurso como sostiene el mismo funcionario. Seguiremos en nuestro examen el orden fijado en la nota de 15 de junio de 1914.

1. El primer defecto, o sea el de la carencia de facultades por parte del Comisionado del Interior para celebrar el contrato, no puede sostenerse que quedara subsanado. Si el Comisionado tenía o nó facultades, dependía de la misma ley vigente al otorgarse las escrituras de 21 de mayo y 29 de julio de 1914, a saber: la ley para autorizar el arrendamiento o venta de los manglares que rodean la Bahía de San Juan, aprobada el 11 de marzo de 1909. La última escritura nada pudo agregar a la primera. La pureza del procedimiento exigía que la parte interesada si no estaba conforme con la teoría del registrador consignada en cuanto a este extremo en su nota de quince de junio, recurriera contra ella para ante esta Corte Suprema en el término que la misma ley prescribe.

2. El segundo defecto quedó subsanado, según reconoció el mismo registrador en su nota de 24 de agosto. Cuando se presentó por segunda vez el contrato en el registro, estaba ya inscrita a favor del arrendador la propiedad de la finca arrendada

3. El tercer defecto no quedó subsanado. La cuestión envuelta en el mismo, a saber: si se trata o nó de un contrato de arrendamiento, pudo someterse a la decisión de este tribunal inmediatamente después de la primera nota.

4. El cuarto defecto quedó subsanado en su último extremo, como acepta el registrador en su nota de 24 de agosto. Antes de otorgarse la escritura de 21 de mayo, se había celebrado el contrato de arrendamiento de que se trata por documento privado  En este documento privado se había fijado un plazo dentro del cual debían comenzarse las obras, y en la escritura se sustituyó ese plazo por el que aparecía en las condiciones suspensivas (precedentes) del arrendamiento. Examinando la escritura de 21 de mayo por sí sola, el defecto existe. Pero examinando la escritura de 21 de mayo en relación con la de 29 de julio y sobre todo con el documento acompañado que contiene las condiciones precedentes de que se trata, el defecto queda subsanado.

La existencia o nó existencia del primer extremo que comprende este defecto, pudo someterse a esta corte apelando directamente de la nota de 15 de junio, ya que en la escritura de 29 de julio no se impuso ninguna nueva obligación al arrendatario, constando todos los derechos y deberes del mismo en la de 21 de mayo de 1914.

5, 6, 7 y 8. Todas las cuestiones envueltas en los defectos quinto, sexto, séptimo y octavo, pudieron discutirse y resolverse por esta Corte Suprema si la parte interesada hubiera recurrido en tiempo de la primera nota. Lo que en cuanto a dichas cuestiones se consigna en la escritura de 29 de julio y aparece en los documentos acompañados, tiende solamente a aclarar más los hechos, pero éstos surgían distintamente de la escritura de 21 de mayo.

Terminado el examen de los defectos calificados de insubsanables, procederemos al de los subsanables, siguiendo también el orden establecido en la nota de 15 de junio.

A. Ya hemos visto que la obscuridad que se notaba en la escritura de 21 de mayo por no haberse acompañado las llamadas condiciones suspensivas del arrendamiento, quedó subsanada al presentarse de nuevo dicha escritura en unión de la de 29 de julio y del expresado documento.

B. Quedó subsanado puesto que se presentaron en la segunda ocasión los documentos cuya falta notó el registrador.

C. Quedó subsanado. Uno de los documentos acompañados cuando el contrato se presentó por segunda vez en el registro, contiene la autorización del Consejo Ejecutivo a que se refiere el registrador.

D. Quedó subsanado. La finca de la cual se segrega la parcela arrendada y la misma parcela objeto del contrato se describen debidamente en la escritura de 29 de julio.

E. También quedó subsanado. El nombre de la esposa del arrendatario se consigna en la escritura de 29 de julio.

Terminado el examen de las únicas cuestiones envueltas en este caso que nós es dable resolver dentro de este recurso, de acuerdo con la jurisprudencia establecida, debemos hacer

constar con toda claridad que al concluir que los defectos señalados en la nota de 15 de junio con los números 1, 3, 4, primer extremo, 5, 6, 7 y 8 no quedaron subsanados, no implica en modo alguno que nosotros aceptemos la existencia de tales defectos, sino únicamente que no podemos investigar si existen o no por no haberse recurrido en contra de ellos dentro del término que la ley prescribe.

También debemos en justicia hacer constar que lo resuelto por el registrador obliga en este caso, dentro del orden administrativo, al arrendatario que presentó el documento y consintió la resolución, mas no al arrendador que en nada intervino en el registro. Esta cuestión está resuelta por la ley y la jurisprudencia. Artículo 6 de la Ley Hipotecaria; *Colonial Company* v. *El Registrador,* 1 D. P. R., 396, 401.

Por virtud de todo lo expuesto, debe desestimarse por extemporáneo el recurso en cuanto pueda considerarse establecido contra la nota de 15 de junio de 1914, y debe confirmarse la nota recurrida de 24 de agosto de 1914, pero modificándola en el sentido de que quedaron subsanados los defectos subsanables marcados con las letras A, B, C, D, y E en la nota de 15 de junio de 1914.

> *Desestimado el recurso en cuanto se refiera directamente a la nota de junio 15, 1914, y confirmada la nota recurrida de 24 de agosto de 1914 modificándola en el sentido de declarar subsanados los defectos subsanables marcados con las letras A, B, C, D y E en la dicha nota de junio 15, 1914.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Wolf firmó haciendo constar estar conforme con la resolución.