ANTONIO MULLER VERGARA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE CAGUAS, recurrido.

*Número:* O-72-53          *Resuelto:* 10 de septiembre de 1973

588

*Hugo Rubén Félix,* abogado del recurrente; el Registrador recurrido compareció por escrito y personalmente.

El Juez Asociado Señor Martínez Muñoz emitió la opinión del Tribunal.

El recurrente Antonio Muller Vergara presentó en el Registro de la Propiedad de Caguas, Sección Segunda, la escritura Núm. 5, otorgada en Aguas Buenas el 31 de marzo de 1941 ante el notario Luis Mendín Sabat, sobre partición y adjudicación de bienes al óbito de don Hilario Hernández y la que fue su esposa, doña María Hernández Muller. De los seis herederos, sólo tres María Hernández Vergara, Engracia Hernández Vergara y Ursina Hernández Vergara, comparecieron por derecho propio. Los otros tres, Ramón, Domingo y José Hernández Vergara, no comparecieron; a su nombre comparece Juan Mercado como mandatario, cuyo carácter se compromete acreditar cuantas veces fuese necesario.

Entre otros documentos públicos complementarios, se incluyó copia certificada de la escritura Núm. 602 otorgada ante el notario don Antonio L. López el 25 de octubre de 1945 sobre compraventa, por virtud de la cual el recurrente acredita su derecho de interesado en la inscripción de la propiedad, que en la referida escritura número 5 sobre partición hereditaria se describe bajo la letra "C", compuesta de un solar de ciento cuatro metros y trescientos milímetros cuadrados y casa de madera situados en el pueblo de Aguas Buenas, a favor de la adjudicataria doña María Socorro Hernández Vergara.

Además, se acompañaron una serie de documentos complementarios que se refieren a enajenaciones hechas por los adjudicatarios y herederos Ramón y José Hernández Vergara, y por los herederos de Domingo Hernández Vergara, de condominios en una finca de cuarenta y seis cuerdas, designada bajo la letra "B" de la escritura de partición, en virtud de cuyas enajenaciones el comprador, Ramón Ramos Del Valle, quedó como dueño de la totalidad de esa finca y el título inscrito a su nombre en el Registro de la Propiedad.

Los poderes de Juan Mercado no fueron presentados al Registro. El Registrador denegó la inscripción solicitada a virtud de la siguiente nota:

"Se deniega la inscripción de este documento sin tomar operación alguna en el Registro por haber sido ya denegada anteriormente según anotación preventiva practicada en el folio 65 vuelto del tomo 55 de Aguas Buenas, finca 779, Anotación A con fecha 8 de diciembre de 1970 y no haberse corregido todos los defectos apuntados en dicha anotación, según ha sido ya resuelto repetidas veces por el Tribunal Supremo (Iglesia Católica vs. Registrador 72 D.P.R. 847), y siendo el actual presentante un causahabiente de quien presentó el título la primera Vez que fue denegada su inscripción, son oponibles a éste los mismos preceptos. Este documento fue notificado con fecha 11 de agosto de 1971. Esta nota tendrá vigencia por el término legal de 60 días."

■ Contra esa actuación del Registrador, acude ante nos el recurrente Antonio Muller Vergara. Como primera cuestión sostiene el Registrador que este recurso debe desestimarse. Basa su solicitud en el hecho de que contra la denegatoria de inscripción, a la cual se hace referencia en la nota recurrida, de la escritura número 5 sobre Partición de Bienes, la heredera y adjudicataria María Socorro Hernández Vergara instó recurso gubernativo ante este tribunal, siendo éste desestimado por falta de jurisdicción por haber sido interpuesto fuera del término fijado por la ley. La resolución de este tribunal que desestimó dicho recurso, (¹) según la tesis del Registrador, le es oponible a todos los interesados, incluyendo al recurrente Muller Vergara, por ser éste un causahabiente de doña María Socorro Hernández Vergara, quien presentó el título por primera vez, de suerte que si ésta no puede instar un nuevo recurso, tampoco lo puede hacer Muller Vergara. En otras palabras, que habiendo sido consentida la primera nota por la cual se denegó la inscripción de la referida escritura número 5, en cuanto al inmueble aquí envuelto, no puede volverse a presentar ese documento para su inscripción.

_____
(¹)*María Socorro Hernández Vergara v. Registrador*, recurso Núm. O-71-43, resuelto el 24 de marzo de 1971.

■ La cuestión ha sido resuelta en forma adversa al criterio sustentado por el registrador. El Art. 6 de la Ley Hipotecaria, 30 L.P.R.A. sec. 31, dispone que la inscripción de los títulos en el registro podrá pedirse indistintamente por el que trasmita el derecho; por el que lo adquiera; por quien tenga interés en asegurar el derecho que se deba inscribir, y por quien tenga la representación legítima de cualquiera de ellos o por cualquier mandatario verbal de aquellas personas. De acuerdo con este precepto, hace casi tres cuartos de siglo, en *Compañía Colonial Limitada* v. *El Registrador*, 1 D.P.R. 109 (1900), sostuvimos que las resoluciones de los Registradores de la Propiedad no recurridas gubernativamente dentro del término legal, se considerarán firmes en el orden administrativo para la parte que haya solicitado la inscripción del documento, pero que ello ha de entenderse sin perjuicio de los derechos que puedan asistir a otras partes interesadas en la inscripción del mismo documento. Se trataba allí de una denegatoria de la inscripción solicitada por la cesionaria de ciertas propiedades inmuebles y créditos hipotecarios que le fueron traspasados por la dueña-cedente, contra cuya denegatoria se interpuso recurso gubernativo fuera del término legal, por cuyo motivo fue desestimado el recurso.

En *Behn* v. *Registrador de la Propiedad*, 21 D.P.R. 513 (1914), la nota denegatoria recurrida se refería a la inscripción de cierto contrato de arrendamiento celebrado entre el entonces Comisionado del Interior de Puerto Rico, como arrendador, y Hernand Behn, como arrendatario. La inscripción del contrato a instancia del arrendatario ya había sido previamente denegada por el Registrador y recurrida esta primera nota por el arrendatario fue desestimado el recurso por haber sido presentado fuera de término. Resolvimos allí que la primera nota denegatoria fue consentida en la vía gubernativa por el arrendatario, y que, al considerar los méritos del recurso contra la segunda nota denegatoria, nuestro campo de acción está limitado a examinar y a resolver si se

subsanaron o no por la parte interesada los defectos consignados por el Registrador en su primera nota. Dejamos consignado, sin embargo, en la opinión (pág. 525):

"También debemos en justicia hacer constar que lo resuelto por el registrador obliga en este caso, dentro del orden administrativo, al arrendatario que presentó el documento y consintió la resolución, más no al arrendador que en nada intervino en el registro. Esta cuestión está resuelta por la ley y la jurisprudencia. Artículo 6 de la Ley Hipotecaria; *Colonial Company* v. *El Registrador*. 1 D.P.R. 396, 401."

Reiterando esa norma, consideramos los méritos del recurso posterior, esta vez instado por el *arrendador* contra la tercera nota denegatoria de inscripción del referido contrato de arrendamiento. *El Pueblo* v. *Registrador*, 22 D.P.R. 803 (1915).

En armonía con la ley y estas decisiones, resolvimos en *Nadal* v. *El Registrador de San Germán*, 30 D.P.R. 77 (1922), que el derecho de un vendedor, de acuerdo con el Art. 6 de la Ley Hipotecaria, para obtener la inscripción del contrato de compraventa, no puede ser perjudicado por el hecho de que una nota previa del Registrador denegando la inscripción había sido consentida por el comprador. Y en *Jiménez* v. *Registrador*, 62 D.P.R. 353 (1943), la nota denegatoria anterior fue consentida por el vendedor de quien adquirió Jiménez, el recurrente. Sostuvimos allí (pág. 356):

"En el caso de autos la nota denegatoria de inscripción fue consentida por Díaz de quien adquirió el recurrente, y la segunda vez que se presentó el documento para inscripción fue Jiménez Solá, el recurrente, el que lo presentó. Era otra parte la que presentaba el documento la segunda vez. La nota consentida por Díaz no podía perjudicar el derecho del recurrente a pedir la inscripción del documento cuya inscripción había sido denegada y no recurrida por Díaz."

Pronunciamientos paralelos pueden verse en *Autoridad de Fuentes Fluviales* v. *Registrador*, 71 D.P.R. 847, 850 (1950), en relación con la inscripción de un derecho de servi-

dumbre constituido sobre una finca por alguien que a su vez adquirió la finca del comprador en un procedimiento de apremio por contribuciones, habiéndose previamente denegado la inscripción del certificado original de compra de la propiedad; *Colón* v. *Registrador*, 67 D.P.R. 17, 18–19 (1947), en el que se trataba de la presentación en el registro de un documento en dos ocasiones y por un mandatario, sin que constara que en ambas ocasiones éste actuara como mandatario, verbal de la misma persona; y *Bermúdez* v. *Registrador*, 41 D.P.R. 391 (1930), donde sostuvimos a la pág. 393:

"Ahora bien, ni las puertas del registro ni las de esta corte en su caso, están cerradas por completo. Se trata de un contrato. Una parte trató de subsanar los defectos apuntados en la inscripción primitiva del mismo. Negó la subsanación el registrador y la parte consintió. Para ella terminó el procedimiento. Pero existe la otra parte y ella puede gestionar de nuevo la inscripción del contrato sin defecto y obtener que también de nuevo considere el registrador su caso."

El Registrador expresa su inconformidad a lo resuelto en esos casos. Advierte que ello tiende a ocasionar obstáculos en el trámite administrativo y despacho de documentos por medio de la repetida y sucesiva presentación de títulos cuya inscripción se hubiera denegado y hace un llamamiento al principio de "economía procesal", según el cual "los asuntos deben resolverse de una vez y para siempre." Aunque simpatizamos en parte con la posición del Registrador, entendemos que los términos del Art. 18 de la Ley Hipotecaria, 30 L.P.R.A. sec. 43, le impiden abstenerse de calificar el documento presentado por persona distinta afectada por la calificación precedente. El Art. 18 reza así:

"Los Registradores *calificarán* bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicite la inscripción y la capacidad de los otorgantes por lo que resulte de las mismas escrituras.

Del mismo modo calificarán, bajo su responsabilidad y para el único efecto de admitir, suspender o negar su inscripción o

anotación, todos los documentos expedidos por la Autoridad judicial.

Contra la suspensión o denegación de inscripción o anotación preventiva no se darán más recursos que los señalados en este subtítulo, sin que los Jueces o Tribunales puedan obligar en otra forma a los Registradores a que inscriban o anoten en virtud de documentos judiciales." (Énfasis suplido.)

La calificación es función obligada del Registrador. En su obra sobre *Derecho Hipotecario*, Sexta Edición 1968, T. II, pág. 263, Roca Sastre nos dice:

"El Registrador tiene la *obligación* de ejercer su función calificadora, a menos que exista *razón fundada* que le imponga abstenerse, sin que, en general, sea admisible su *estado de duda* al respecto, ni la existencia de una *calificación precedente,* en ningún caso." (Énfasis del autor.)

En sentido parecido se pronuncia Sanz, *Instituciones de Derecho Hipotecario*, Ed. 1953, T. II, pág. 152; R. de la Dirección General de los Registros, de 27 de mayo de 1902, Roca Sastre, *Jurisprudencia Registral*, T. III, págs. 931–933; y R. de 13 de julio de 1933, ob. cit., T. VII, págs. 416–421.

■ La nota denegatoria anterior que fue consentida por la antecesora en título del recurrente no le es oponible a éste. En cuanto a aquella primera nota, sí le son aplicables a la antecesora en título que la consintió, lo resuelto en *Vda. de Carlo* v. *Toro*, 99 D.P.R. 200, 235 (1970), y casos allí citados:

"Consentida una negativa no puede el Supremo resolver una segunda negativa que es reiteración de la primera. *Stubbe Bros.* v. *Registrador,* 39 D.P.R. 478 (1929); *Robles* v. *Registrador,* 46 D.P.R. 12 (1934); *Echevarría* v. *Registrador,* 24 D.P.R. 87 (1916).

Desde el 1909 tenemos dicho que no son revisables o apelables las notas renovadas denegatorias de inscripción, entendiéndose consentida la nota original reproducida, 'pues si se permitiera la renovación incesante de anotaciones de títulos no inscritos por defectos insubsanables se impediría la inscripción de títulos perfectos de otras personas'. *Barreras* v. *Registrador,* 15 D.P.R. 556."

La segunda cuestión a considerar va a los méritos de la nota recurrida, esto es, si los documentos cumplementarios presentados al Registrador demuestran que los tres herederos que no comparecieron en la escritura número 5 sobre partición y adjudicación de bienes, es decir, Ramón, Domingo y José Hernández Vergara, no habiéndose presentado el poder de la persona que dijo representarlos, ratificaron tácitamente la división y adjudicaciones de bienes hereditarios allí expresados.

En *Nido & Cía., S. en C.* v. *Registrador,* 74 D.P.R. 789, 802 (1953), consignamos la norma que regula la función calificadora del Registrador basada en la Ley Hipotecaria. Dijimos allí (pág. 802):

"La facultad que tiene el Registrador para exigir que se cumpla con los requisitos de la Ley Hipotecaria y del derecho positivo antes de que se verifique una inscripción tiene especial significación cuando de los documetos presentados y de los asientos del Registro no surge la capacidad ni el poder representacional del otorgante. Tal como se resuelve en *Rivera* v. *Registrador,* 17 D.P.R. 323, 324, de acuerdo con el citado artículo 18 el Registrador tiene el deber de calificar la capacidad de los otorgantes por lo que resulte de la escritura que para su inscripción se le presente y de los asientos en el Registro, pero ello significa que él no puede usar datos extraños a la escritura o a los asientos registrales, pero ello no implica que en todo caso el Registrador haya de tener por probado la capacidad de los otorgantes, sólo porque el notario la afirme, ya que tal afirmación debe ser congruente con la ley y con los asientos en el Registro en cuanto a la misma finca."

Nuestro sistema registral inmobiliario excluye, como apunta Roca Sastre, *ob. cit.,* págs. 243–250, al referirse a la naturaleza jurídica de la función calificadora, "toda idea de que el Registrador es un Juez . . .," ni tiene por objeto "[d]eclarar la existencia o inexistencia de un derecho dudoso. . . ." La calificación registral está limitada a los solos efectos de extender, suspender o negar la inscripción o anota-

ción, nota marginal o cancelación solicitada. Art. 78 del Reglamento Hipotecario.

El ámbito de la función calificadora del Registrador está regulada por ley. Como dijimos en el caso de *Autoridad de Tierras* v. *Registrador,* 62 D.P.R. 506, 509 (1944):

"Esa función está regulada por el artículo 18 de la Ley Hipotecaria que expresamente prescribe que 'los registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicita la inscripción, y la capacidad de los otorgantes *por lo que resulte de las mismas escrituras'*. (Bastardillas nuestras.) El Registrador, al calificar un documento, no resuelve cuestiones de hecho ni aprecia evidencia. Su misión consite en examinar los documentos auténticos que se le presentan, ya como principal, ya como complementarios, para con lo que de ellos resulte y de los datos o antecedentes que arrojen los asientos del Registro relacionados con el título presentado, determinar si puede legalmente practicarse la inscripción o anotación que se solicita."

■ De los documentos complementarios sometidos al Registrador surge que los adjudicatarios y herederos Ramón y José Hernández Vergara y los herederos de Domingo Hernández Vergara vendieron a un tercero de nombre Ramón Ramos Del Valle la participación que a cada uno le correspondía en la finca de 46 cuerdas descrita bajo la letra "B" de la escritura de partición de bienes hereditarios. Esta finca le fue adjudicada por terceras partes a dichos tres herederos. En el otorgamiento de la escritura comparece a su nombre Juan Mercado como mandatario. El poder de Mercado no fue presentado. Sostiene el recurrente que la presentación del poder no es necesaria, en este caso, ya que las enajenaciones de sus respectivos derechos y participaciones en la finca de 46 cuerdas tienen el efecto de una "confirmación" o "ratificación" de la escritura sobre partición de bienes hereditarios.

No estamos de acuerdo. Lo que pretendieron hacer las partes comparecientes en la escritura número 5 fue llevar a cabo una partición extrajudicial. Ello requiere la unanimidad,

o sea, la concurrencia y consentimiento de los herederos por sí o por medio de apoderados. Arts. 1011 y 1012 del Código Civil, 31 L.P.R.A. sec. 2877 y 2878. La partición se verificó sobre ciertas bases. Primero, se procedió a formalizar el cuerpo general de bienes; luego, las bajas; se procede entonces a su avalúo, se fija el haber de cada heredero y se le adjudica a cambio de la participación abstracta de cada uno en el patrimonio relicto, partes determinadas y específicas de los bienes del caudal. No se trata de una sola finca, sino varias las que fueron descritas y objeto de partición. Existen varios supuestos de hecho en la escritura; sobre estos supuestos se verificó la adjudicación final. El principio de *unanimidad* es básico. Supone la concurrencia y consentimiento de los herederos que no dé lugar a dudas, por sí o por medio de apoderado, respecto a *todos* y no sólo algunos de los *supuestos* o *bases* que sirvieron de apoyo a la adjudicación. La determinación de si hubo o no ratificación de *todos* los supuestos, estipulaciones y adjudicaciones que aparecen consignadas en la escritura de partición es, a nuestro juicio, una cuestión de hecho debatible que corresponde resolver dentro del ámbito judicial en el procedimiento adecuado a la luz de los documentos complementarios y cualquier otra evidencia, incluyendo prueba oral, y no dentro del administrativo registral del cual el recurso gubernativo es sólo un incidente. *Sucn. Jiménez* v. *Registrador*, 48 D.P.R. 858, 861 (1935).

*Se confirmará la nota recurrida.*

Los Jueces Asociados, Señores Rigau, Cadilla Ginorio, Díaz Cruz e Irizarry Yunqué, no intervinieron.