U.S.I. PROPERTIES, INC., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD, SECCIÓN DE FAJARDO, recurrido.

*Número:* RG-88–581      *Resuelto:* 30 de junio de 1989

*José A. Ledesma Vivaldi*, de *Ledesma, Palou & Miranda*, abogado de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Afirma Chico y Ortiz, apoyándose en Vallet de Goytisolo, que "la labor del Notario en la adaptación de las normas a la vida jurídica, tiene ante sí el 'freno' de la calificación de los

Registradores de la Propiedad. Ese freno puede ser saludable si consigue evitar subjetivismos o fantasías. Pero puede ser contrario a la vida jurídica si actúa meramente como cancerbero de la letra de la ley . . . en contra de las verdaderas necesidades jurídicas vitales. Por eso es importantísimo que entre la acción y el freno haya una ponderada resolución de los conflictos que puedan originarse". J.M. Chico y Ortiz, *La inscripción registral y el documento notarial como fuente de construcciones jurídicas*, en *Ponencias y comunicaciones presentadas al III Congreso Internacional de Derecho Registral*, San Juan, Inst. Der. Registral y Notarial de P.R., 1977, T. II, pág. 26.

Este recurso gubernativo nos permite ampliar la interpretación del Art. 64 (30 L.P.R.A. sec. 2267) y otras disposiciones de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria) relativas a la naturaleza de los documentos complementarios y la facultad del Registrador de la Propiedad (Registrador) para solicitarlos, en el ejercicio de su función calificadora.

I

El 21 de noviembre de 1984 se presentó para inscripción en el Registro de la Propiedad (Registro), Sección de Humacao, la Escritura Núm. 117 de segregación y permuta otorgada ante el notario José A. Ledesma Vivaldi el 15 de noviembre de 1984 por la Autoridad de Tierras de Puerto Rico (Autoridad) y U.S.I. Properties, Inc. (U.S.I.). En dicha escritura constaba la segregación de 113.5 cuerdas de la finca San Pedro, perteneciente a la Autoridad, y su permuta junto a otras segregaciones de fincas localizadas en Naguabo, Río Grande y Vega Baja —con cabida total de 501.5 cuerdas— por una finca de 464 cuerdas pertenecientes a la U.S.I. localizada en Humacao. Esta permuta formó parte de la transac-

ción del caso Civil Núm. 80-3778 (908), Tribunal Superior, Sala de San Juan.(1)

(1) Instado por U.S.I. Properties, Inc. (U.S.I.) el 8 de julio de 1980 en que reclamó de la Corporación Azucarera de Puerto Rico y su aseguradora la suma de $10,000,000 por incumplimiento de contrato. Alegó que la Corporación Azucarera dejó de proveerle mantenimiento al sistema de bombeo de agua de la finca Santa Teresa, razón por la cual su propiedad fue clasificada como terrenos anegados (*wetland*) por agencias del Gobierno de Estados Unidos. Esto creaba el peligro de que fuera privado de su derecho de propiedad.

El 1ro de diciembre de 1982, fecha señalada para una vista en su fondo, los abogados informaron al tribunal de unas negociaciones entre las partes, a los fines de efectuar una permuta de la finca Santa Teresa por otras propiedades inmuebles de la Autoridad de Tierras de Puerto Rico (Autoridad).

A tenor con estas negociaciones, se suscribió una *carta de intención* por la demandante, U.S.I., U.S. Industries, Inc., el Departamento de Recursos Naturales de Puerto Rico, representado por su Secretaria Hilda Díaz Soltero, y la Autoridad, representada por su Director Ejecutivo Rafael Bonilla Robles.

Para evitar que el caso se tornara académico se acordó, y el tribunal ordenó, el establecimiento de un mecanismo para hacer viable la permuta. Como surgieron discrepancias en cuanto a la tasación de las fincas, y para evitar las demoras y gastos adicionales, el 4 de agosto de 1983 se celebró una reunión en la oficina de la Secretaria de Recursos Naturales Díaz Soltero. Además de ella, estuvieron presentes Rafael Bonilla Robles y Donald L. Alberty, Vice Presidente de Operaciones de U.S.I. En dicha reunión se acordaron los términos de la permuta, la cual quedó sujeta a la aprobación de la Junta de Gobierno de la Autoridad. Esta condición se cumplió el 20 de octubre de 1983, cuando este organismo determinó "'que se proced[iera] con la permuta según propuesta, [y se] procedie[ra] con los trámites necesarios para efectuar la misma'". Apéndice VII, pág. 79.

Sin embargo, la Autoridad no actuó conforme a los términos del contrato. Por tal razón, a solicitud de la demandante recurrente, el tribunal de instancia señaló una vista para el 27 de diciembre de 1983 y ordenó la comparecencia del Presidente de la Junta de Gobierno de la Autoridad y del Presidente de la Corporación Azucarera.

A esta vista compareció el Lcdo. Francisco Navarro Mendía, abogado de la Autoridad. Éste, por primera vez, planteó su preocupación sobre la validez jurídica de la permuta acordada. Luego de escuchar los planteamientos de las partes y de la Autoridad —que se había sometido voluntariamente— y de permitirles que presentaran memorandos sobre sus respectivas contenciones, el tribunal de instancia emitió el dictamen judicial siguiente:

"1. La Autoridad de Tierras de Puerto Rico deberá, bajo apercibimiento de desacato, en los treinta (30) días siguientes a la notificación de esta orden, realizar los siguientes actos a su propio costo, según pactó: medir, segregar y presentar para su inscripción en el Registro de la Propiedad correspondiente todas y cada una de las fincas que se *comprometió* a permutar.

"2. La demandante deberá, bajo apercibimiento de desacato, en los treinta (30) días siguientes a la notificación de esta orden, realizar los siguientes

El 5 de noviembre de 1985 se presentó en esta misma sección del Registro la escritura de compraventa Núm. 16 de 3 de octubre de 1985, otorgada ante el notario Silvestre M. Miranda por U.S.I. y Ricama Development and Construction Corp. Dicha escritura recogió el contrato de compraventa de algunas de las fincas objeto de la aludida permuta.

El 7 de julio de 1988 el Registrador, Sección de Fajardo, notificó al licenciado Ledesma Vivaldi que la escritura de segregación y permuta adolecía de las siguientes faltas que impedían su inscripción:(2)

1- La segregación de la finca objeto de la permuta requiere la *autorización* [*o permiso*] *de la Junta de Planificación*, a virtud de la Ley Núm[.] 103 del 3 de julio de 1974 (28 LPRA Secs. 592 a 594) según enmendada por la Ley Núm. 33 del 10 de mayo de 1976, especialmente la Sección 594, [no habiendo la *Autoridad de Tierras aprobado en forma final la transacción debido a las dudas legales* que tenía al respecto, por lo

actos a su propio costo, *según pactó*: medir, segregar y presentar para su inscripción en el Registro de la Propiedad correspondiente la finca que se comprometió a permutar.

"3. En el término de quince (15) días después de realizarse las gestiones anteriormente dispuestas, la Autoridad de Tierras y la demandante deberán comparecer con los correspondientes documentos a las oficinas de los abogados de la demandante para que, *según se pactó*, se otorgue la correspondiente escritura de permuta.

"4. Los Registradores de la Propiedad donde [sic] se deban inscribir las fincas objeto de la permuta deberán inscribir dichas fincas sin requerir aprobación previa de la Junta de Planificación a tenor con lo dispuesto en 28 L.P.R.A. sec. 594, *ya que el Tribunal determinó que dicha disposición legal no es aplicable a los hechos de este caso*.

"5. En el término de cinco (5) días desde que se otorgue la escritura de permuta, la demandante radicará un escrito *desistiendo de este litigio y de todos los demás litigios relacionados que se comprometió a desistir.*" (Énfasis suplido.) Apéndice VII, pág. 82.

Este dictamen se convirtió en final y firme por no haber ninguna de las partes apelado ante este Tribunal Supremo.

(2) Después de la presentación de las escrituras, se creó la nueva sección registral de Fajardo, que comprende los Municipios de Fajardo, Luquillo, Vieques, Culebra y Ceiba, por lo cual dichas escrituras, luego de inscritas en el Registro de Humacao, fueron transferidas a Fajardo para la correspondiente inscripción de los inmuebles sitos en el Municipio de Fajardo.

que el título de los terrenos permutados debe revertirse a dicha Agencia. Véase] 28 LPRA [Sec. 278].

Tal prohibición y restricción es tan absoluta que la Sección 596 del Título 28 de LPRA dispone: Que en la sección correspondiente del Registro de la Propiedad de Puerto Rico, deberá tomarse razón de las condiciones y restricciones establecidas en las secciones 592 a 596 de ese Título al practicarse la inscripción tanto de los terrenos concedidos en ventas o en usufructo, bajo las disposiciones de la Ley de Tierra de Puerto Rico, como de los terrenos concedidos en ventas o usufructo con fines de mantenerlos y dedicarlos a uso agrícola, que haya adquirido y en el futuro adquiera la Administración de Terrenos de Puerto Rico y cualesquiera otra agencia, instrumentalidad o corporación pública del Estado Libre Asociado de Puerto Rico.

.    .    .    .    .    .    .    .

2– La Autoridad de Tierras de Puerto Rico no fue parte en el pleito que culminó en la transacción de permuta determinada y ordenada en la sentencia, por lo que el Tribunal actuó *sin jurisdicción.*

3– El Departamento de Recursos Naturales, [que] promovió el arreglo o transacción tampoco [tuvo *participación*] en el pleito.

4– La transacción *viola la disposición constitucional sobre tenencias de tierras por [las] corporaciones*[,] en el sentido de que ninguna corporación estará autorizada para efectuar negocios de compra y venta de bienes raíces; ni se le permitirá poseer o tener dicha clase de bienes, a excepción de aquellos que fuer[en] racionalmente necesarios para poder llevar adelante los propósitos a que obedec[en] su creación. [Véase Sec. 14 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico.] (Énfasis suplido.) Apéndice II, pág. 29.

Las mismas faltas eran atribuibles a la escritura de compraventa, ya que su acceso al Registro dependía de la inscripción de la escritura de seregación y permuta.

Inconformes, los notarios autorizantes sometieron sendos escritos de recalificación. El 10 de agosto de 1988 el Registrador dejó sin efecto la primera notificación y efectuó

una *"nueva* notificación". Ésta reprodujo los cuatro (4) errores antes señalados, más les requirió los documentos complementarios siguientes:

(a) copia de la sentencia que di[o] origen a la segregación y permuta de las fincas de la Autoridad de Tierras;

(b) copia del expediente o de los autos del caso, incluyendo las mociones, órdenes y minutas de las incidencias habidas en el caso y el diligenciamiento de los emplazamientos[,] y

(c) copia de los artículos de incorporación, el reglamento y de los más recientes informes sometidos por U.S.I. Properties Corporation al Departamento de Estado y al Departamento de Hacienda de Puerto Rico. Apéndice IV, págs. 49–50.

El 26 de agosto de 1988 se presentaron nuevos escritos de recalificación. U.S.I. se negó a suplir los documentos solicitados, salvo una copia certificada adicional de la sentencia. Entendió que no tenía la obligación en ley de someterlos.

Ante esta negativa, el 30 de agosto de 1988 el Registrador le solicitó a la Secretaria General del Tribunal Superior, Sala de San Juan, una copia certificada del expediente del caso Civil Núm. 80-3778 (908) "'para fines oficiales de recalificación de documentos'". *Exhibit* N, pág. 150. Es decir, el Registrador motu proprio trató de obtener directamente del tribunal aquello que las partes presentantes se negaron a producir oportunamente. El 8 de septiembre de 1988 el Juez Administrador (Hon. Carlos E. Polo) ordenó la comparecencia escrita del Registrador y de los abogados. Después, el 16 de septiembre, ordenó a la Secretaría del tribunal que uniera el caso Civil Núm. KJV-88-1268 al expediente original del caso Civil Núm. 80-3778 (908). El 19 de septiembre de 1988 compareció por escrito U.S.I. ante dicho tribunal. Sin embargo, ese mismo día el Registrador presentó una "moción para desistir" de su solicitud de copia del expediente judicial.

Así las cosas, el 23 de septiembre de 1988, el Registrador notificó a los notarios, licenciados Ledesma Vivaldi y Mi-

randa, su denegatoria final a la recalificación. Dejó en vigor la nueva notificación y denegó la inscripción de las referidas escrituras por los fundamentos expuestos en su notificación, con exclusión del defecto consignado en el Apartado Núm. 4, relativo al alegado reparo constitucional de tenencia de tierras por una corporación.

Inconformes, instaron este recurso gubernativo. En su apoyo alegan que el Registrador cometió, en resumen, los errores siguientes:

1. El Registrador no puede posponer o negarse a calificar los documentos presentados ante sí, a efectuar las operaciones registrales correspondientes, por lo que su segunda calificación de 10 de agosto de 1988 es totalmente errónea y contraria a derecho.

2. De acuerdo con la Ley Hipotecaria y su reglamento, el Registrador no podía solicitar los documentos complementarios para la inscripción de la escritura Núm. 117.

3. El Registrador se excedió en su facultad de calificar documentos y traspasó los límites de su autoridad al tomar en consideración información obtenida de fuentes ajenas a la escritura objeto de calificación y a los documentos complementarios que se acompañaron.

4. Erró el Registrador al concluir que el Tribunal Superior carecía de jurisdicción sobre la Autoridad de Tierras, ya que su obligación era calificar las escrituras presentadas ante sí y no la sentencia judicial que les sirvió de complemento.

5. "Erró el Registrador al pasar juicio sobre la corrección de la determinación del Tribunal Superior referente a la inaplicabilidad de las disposiciones de la Ley Núm. [107] de 3 de julio de 1974 y otros extremos."

6. Erró el Registrador al concluir que el Departamento de Recursos Naturales, alegado promovente del arreglo o transacción entre U.S.I. y la Corporación Azucarera de

Puerto Rico, Inc., era parte necesaria en el pleito de referencia.

Examinemos los méritos de estos señalamientos.

## II

Los hechos expuestos reflejan que el Registrador notificó nuevos defectos luego de presentados los escritos de recalificación. Los recurrentes invocan a *Algarín v. Registrador*, 110 D.P.R. 603 (1981), para insistir en que una vez el Registrador tiene ante sí un escrito de recalificación surge el deber ministerial de pasar juicio sobre éste. Así planteada, podemos concluir que la primera controversia ante nos se reduce a determinar si un registrador puede hacer nuevas notificaciones después de habérsele sometido un escrito de recalificación.

El Art. 69 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2272, faculta al Registrador a hacer más de una notificación sobre la calificación de un documento presentado al Registro. Cuando esto sucede, el término de sesenta (60) días para corregir el defecto comenzará a contar a partir de la última notificación del Registrador, siempre y cuando la segunda notificación se haga "dentro del término de 60 días a partir de la primera notificación, antes de que haya caducado el asiento de presentación". Art. 81.10 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad (Reglamento Hipotecario), 30 L.P.R.A. sec. 2003-81.10, edición especial. Véase *Banco Comercial v. Registrador*, 118 D.P.R. 773 (1987).

Ante estas circunstancias, no podemos convenir con los recurrentes en que el Registrador se negó a pasar juicio sobre su escrito de recalificación, como sucedió en *Algarín v. Registrador*, supra, y *Housing Inv. Corp. v. Registrador*, 110 D.P.R. 490, 500 (1980), y casos allí citados. Aquí, la notificación de 10 de agosto de 1988, más que dejar sin efecto la primera notificación —como afirmó el propio Registrador—

sólo la enmendó para añadirle un apartado adicional (Núm. 5) a los efectos de solicitar unos documentos complementarios.(3) En este sentido, el Registrador actuó en consonancia con el Art. 81.2 del Reglamento Hipotecario, 30 L.P.R.A. sec. 2003-81.2, edición especial, preceptivo de que cuando el Registrador no incluya en la primera notificación todas las faltas que encuentre en los documentos presentados —que es lo preferible— al hacer la subsiguiente deberá referirse a dicha notificación y expresar, además, las nuevas faltas junto con las anteriores.

■ Aunque U.S.I. podía reproducir los argumentos del escrito de recalificación original y añadir —como lo hizo— sus objeciones a la enmienda practicada en la segunda notificación, el Registrador debió hacer *lo posible* por señalar todas las faltas en la primera notificación. Aunque permisible, no es la mejor práctica notificar nuevos defectos después de la presentación de un asunto de recalificación. El primer error no fue cometido. La cuestión, como veremos, es inconsecuente para la fiel solución del recurso.

---

(3) "Por la presente *dejo sin efecto* la referida notificación, a fin de enviar una nueva notificación, en la que se añade el apartado o párrafo número 5 para incluir el requerimiento de que someta los siguientes documentos complementarios, debidamente certificados: (a) copia de la sentencia que dio origen a la segregación y permuta de las fincas de la Autoridad de Tierras; (b) copia del expediente o de los autos del caso, incluyendo las mociones, órdenes y minutas de las incidencias habidas en el caso y el diligenciamiento de los emplazamientos y (c) copia de los artículos de incorporación, el reglamento y de los más recientes informes sometidos por U.S.I. Properties Corporation al Departamento de Estado y al Departamento de Hacienda de Puerto Rico.

"Tendrá un nuevo término de veinte días para someter nuevo escrito de recalificación con un nuevo periodo de caducidad de sesenta días conforme a los artículos 69 y 70 de la Ley #198 del 8 de agosto de 1979 (Ley Hipotecaria) y los artículos 66.5 y 81.11 del Reglamento Hipotecario.

"Se acompaña la *notificación enmendada*." (Énfasis suplido.) *Exhibit* G, pág. 82.

## III

En su segundo señalamiento U.S.I. cuestiona la facultad del Registrador para requerir la producción de documentos complementarios. Según hemos visto, el 10 de agosto de 1988 el Registrador hizo una nueva notificación que ampliaba la primera, a los efectos de que le sometieran determinados documentos complementarios.

El Registrador recurrido reafirma la validez de su actuación fundándose en las normas dos (2) y tres (3) de *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110 (1986). Aduce que de la propia sentencia surge que el Tribunal Superior la dictó sin tener jurisdicción sobre la Autoridad. Argumenta que ni dicha agencia ni el Departamento de Recursos Naturales fueron partes en el pleito. Apunta, además, que la segregación de los terrenos permutados es ilegal por no contar con la autorización de la Junta de Planificación, conforme la Ley Núm. 107 de 3 de julio de 1974, según enmendada por la Ley Núm. 33 de 10 de mayo de 1976 (28 L.P.R.A. secs. 592–595).

Nos dice que su reclamo de documentos complementarios se debió a que la sentencia informaba que hubo sumisión de partes. Entendió necesario examinar todo el expediente del caso para verificar si en la demanda se incluyó a la Autoridad, si fue debidamente emplazada y si compareció para aceptar responsabilidad. En síntesis, su razonamiento para solicitar el expediente judicial —como documentación complementaria— estuvo predicado en la necesidad de corroborar lo relativo al acto de sumisión y determinar si las actuaciones de las partes y de la Autoridad, con la autorización del Tribunal Superior, configuraron las circunstancias y condiciones necesarias para que la Autoridad se considerara incluida como parte en el pleito y se obtuviera jurisdicción sobre ella, según lo requiere el caso de *Franco v. Corte*, 71 D.P.R. 686, 689 (1950). También quiso determinar si la segre-

gación de los terrenos contó con la aprobación de la Junta de Planificación.

A juicio suyo, como la Autoridad no fue parte en el pleito, no podía el Presidente de su Junta de Directores —el Secretario de Agricultura— llegar a determinados acuerdos ante el Tribunal Superior. En todo caso, le correspondía a la Junta de Planificación pasar juicio sobre el dictamen de la Junta de Directores o del Director Ejecutivo de la Autoridad. Añade que el Tribunal Superior y los participantes se abrogaron funciones al eximir la segregación de la aprobación de la Junta de Planificación.

En cuanto a su solicitud extrarregistral del expediente del caso a la Secretaría del Tribunal Superior, Sala de San Juan, sostiene que lo hizo como Registrador, en su "condición de funcionario público". Insiste en que tenía derecho a requerirlo. Sin embargo, considera "m[á]s propio hacerlo dentro de este recurso gubernativo, a fin de evitar controversias en primera instancia en cuanto a quién corresponde pagar los derechos y de que sea este Honorable Tribunal, a quien correspond[a] aplicar las normas expuestas en el caso de *Mojica Sandoz v. Bayamón Federal Savings*, 86 JTS 24". Alegato del Registrador recurrido, pág. 8.

En contra de estos argumentos, el recurrente sostiene que la solicitud de los documentos por el Registrador no encuentra apoyo en la Ley Hipotecaria ni en el Reglamento Hipotecario. A su entender, la misma escritura reflejaba su propia validez, puesto que en ella se acreditaba la capacidad y autoridad de los suscribientes que representaban a los otorgantes. Aducen que la sentencia dictada en el caso Civil Núm. 80-3778 (908) por el Tribunal Superior adjudicó cualquier duda sobre la capacidad de la Autoridad para realizar el negocio jurídico. Señalan también que del Registro no surge causa alguna para creer que la escritura no sea válida. Tampoco puede inferirse de los documentos presentados los hechos que alegadamente impiden la calificación, tales como:

la falta de aprobación de la transacción por parte de la Autoridad, el estado mental de los miembros de la Junta de dicha agencia al momento de "rechazar la transacción", y la sumisión o ausencia en el pleito del Departamento de Recursos Naturales y de la Autoridad.

Nos expone que de dicha escritura no surge nada que justifique y dé lugar a la solicitud de los estatutos corporativos de U.S.I. y, mucho menos, de sus informes anuales. Tampoco hay constancia alguna de dichos hechos en los libros del Registro. Arguye que el Registrador estaba impedido de tomar conocimiento de estos supuestos hechos —*Infanzón & Rodríguez v. El Registrador*, 24 D.P.R. 141, 142 (1916); *Muller Vergara v. Registrador*, 101 D.P.R. 587, 595 (1973)— y menos tratar de obtener documentos extraños al Registro mediante el mecanismo de solicitud de producción de documentos complementarios. Finalmente concluye que "fue tanto su celo por hallar faltas en la escritura de referencia, que ignorando el ámbito de sus prerrogativas como funcionario de la rama ejecutiva, se lanzó destempladamente a obtener dichos documentos extra[r]registrales por medios ajenos al trámite Registral. En fin, no concurren en la referida escritura y demás documentos presentados, ninguna de las tres situaciones requeridas por el Tribunal Supremo que facultan al Honorable Registrador a solicitar la radicación de documentos complementarios". Recurso gubernativo, pág. 13.

## IV

Tiene razón U.S.I. Recientemente, en *Mojica Sandoz v. Bayamón Federal Savs.*, supra, tuvimos la oportunidad de expresarnos sobre la facultad del Registrador para solicitar documentos complementarios. Dijimos:

Como norma general, la calificación del Registrador en cuanto a los documentos notariales se circunscribe a examinar

si éstos cumplen con las *formas extrínsecas que requiere la ley*, capacidad de otorgantes y si el negocio jurídico contenido es válido. Roca Sastre, *op. cit.*, págs. 268–270; E. Vázquez Bote, *Elementos de Derecho Hipotecario Puertorriqueño*, Barcelona, Artes Gráficas Medinaceli, 1973, págs. 308–310. Tal calificación está limitada por ley a los documentos presentados al Registrador y a lo que resulte de éstos. Art. 64 L.H. El Reglamento Hipotecario, en su Sec. 2003, Art. 76.1 es muy claro:

"El registrador considerará, conforme a lo prescrito en el artículo 64 de la Ley [30 L.P.R.A. sec 2267] como faltas de legalidad de los documentos cuya registración se solicite, todas las que afecten, tanto a las formas de los documentos como a la eficacia de las obligaciones o derechos contenidos en los mismos, *siempre que resulten del texto de dichos documentos o puedan conocerse por la simple inspección de ellos.*" (Énfasis suplido.)

En el tráfico jurídico registral, es plausible que de los documentos presentados resulte que están incompletos y proceda entonces solicitar escritos complementarios. Vázquez Bote, *op. cit.*, pág. 311; Roca Sastre, *op. cit.*, págs. 257, 275, 619 *et seq.*; L. Mojica Sandoz, *Comentarios de jurisprudencia —Ruiz-Sierra v. Registrador*, 36 Rev. C. Abo. P.R. 1075, 1078 (1975). *Mojica Sandoz v. Bayamón Federal Savs.*, supra, págs. 127–128.

En vista de esos pronunciamientos, en ese mismo caso delimitamos el alcance de la facultad de los registradores para solicitar la producción de documentos complementarios a situaciones en que: "(1) por ley o por reglamento *así se requiera* para la inscripción de un documento; (2) del *documento presentado* al Registrador *surja causa* para creer que pueda ser inválido (*Preciosas V. del Lago* v. *Registrador*, [110 D.P.R. 802 (1981)]) y (3) el propio documento no refleje su entera validez." (Énfasis suplido.) *Mojica Sandoz v. Bayamón Federal Savs.*, supra, pág. 129.

Al examinar los hechos de este recurso a la luz de la normativa anterior, forzoso es concluir que el Registrador recurrido no ha podido demostrar la existencia de circunstancias

que ameritaran su requerimiento documental. Expliqué-
monos.

■ Respecto a la solicitud de copia certificada de la sen-
tencia, no hay controversia. Los recurrentes la presentaron.
Ahora bien, los restantes documentos complementarios ame-
ritan una más detenida consideración. Como veremos, el he-
cho de que el Registrador calificara documentos notariales
avalados por un trámite judicial le imponía en el ámbito de la
calificación una mayor prudencia y limitación. *P.R. Prod.
Credit Assoc. v. Registrador*, 123 D.P.R. 231 (1989).

■ Primero, definitivamente, el expediente judicial del
caso Civil Núm. 80-3778 (908) —documentos originales
obrantes en autos, Regla 54.1 de Procedimiento Civil, 32
L.P.R.A. Ap. III— no gozan de la naturaleza de documento
complementario. Recientemente, siguiendo la tesis de Roca
Sastre, señalamos que "'no es documento complementario el
que acredite el cumplimiento de un *trámite judicial especí-
fico* o asimilable'". (Énfasis en el original suprimido y énfasis
suplido.) *Mojica Sandoz v. Bayamón Federal Savs.*, supra,
pág. 129. Precisamente el expediente judicial requerido aco-
pia todos los incidentes del referido pleito.

Segundo, la escritura de segregación y permuta recogió
un negocio fruto de la transacción judicial de un pleito. En
ese sentido ya el Tribunal Superior había adjudicado y pa-
sado juicio —en función de preeminencia correspondiente
únicamente al Poder Judicial— sobre varios extremos y as-
pectos que el Registrador más tarde quiso revisar y reexami-
nar indirectamente. Al solicitar todo el expediente judicial
del caso, el Registrador no sólo se extralimitó en sus facul-
tades para requerir la producción de documentos comple-
mentarios, sino que pretendió extender su brazo calificador
hasta el propio recinto judicial.

Finalmente, en cuanto a la solicitud de copia de los ar-
tículos de incorporación, del reglamento y de los informes

sometidos por la recurrente al Departamento de Estado y al Departamento de Hacienda, basta señalar que en su alegato el Registrador no discute ni fundamenta tal requerimiento. Nos ha resultado imposible precisar qué fin perseguía. No existe ley o reglamento que le exija a U.S.I. tal presentación para que se efectúe la inscripción de la escritura. Aun si presumiéramos como cierta la apreciación del Registrador de que la escritura no refleja su entera validez, y que de la propia sentencia surgía causa para creer que podía ser inválida, no hemos podido detectar un solo fundamento razonable para la solicitud de producción de los documentos corporativos. Ninguna de las objeciones levantadas por el Registrador están fundamentadas en dudas sobre la existencia, *status* jurídico o capacidad para contratar de U.S.I. Además, no vemos relación racional ni lógica entre esas objeciones y la información que podría obtener el Registrador de tales documentos.

■ La facultad de todo Registrador para solicitar documentos complementarios no supone la realización de indiscriminadas expediciones de pesca. El documento debe ser de tal naturaleza o contener la información que razonablemente pueda ayudarlo a realizar la más diligente y acertada calificación. Este principio elemental está inmerso como premisa inarticulada en las tres (3) situaciones que facultan al Registrador a solicitar la producción de documentos complementarios, según vislumbrados en *Mojica Sandoz v. Bayamón Federal Savs.*, supra. Dicho de otro modo, entre el documento solicitado y las dudas u objeciones del Registrador debe existir una relación racional. En las presentes circunstancias no se cumplió con este requisito.

## V

El tercer y el cuarto señalamiento están íntimamente relacionados. Ambos van dirigidos a cuestionar la extensión de

la facultad calificadora del Registrador. Los analizaremos conjuntamente.

■ Es unánime la doctrina de que el principio de legalidad vigente en nuestro ordenamiento hace necesaria la calificación registral a fin de que solamente logren acceso al Registro títulos válidos y perfectos. No obstante este consenso, se han suscitado serios debates sobre la naturaleza jurídica de la función calificadora. En el pasado, estas polémicas fueron hijas de dos (2) criterios fundamentales: el de la *función judicial* y el de la *función administrativa*. Hoy, sin embargo, la salida intermedia de la *jurisdicción voluntaria* —que rechaza estos dos (2) polos— se ha convertido en la teoría predominante. R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, págs. 260–266; J.M. Chico y Ortiz, *Teoría, práctica y fórmula de la calificación registral*, Madrid, Marcial Pons-Libros Jurídicos, 1977, págs. 38–60; *Nueva Enciclopedia Jurídica Española*, Barcelona, Ed. F. Seix, 1951, T. III, págs. 566–575.

■ En Puerto Rico, desde antes de la aprobación de la nueva Ley Hipotecaria de 1979, nos adscribimos a la teoría intermedia. Así, en *L. Dershowitz & Co., Inc. v. Registrador*, 105 D.P.R. 267, 273 (1976), señalamos que "[l]a función calificadora del Registrador de la propiedad inmueble *tiene la naturaleza propia de los actos de jurisdicción voluntaria* [no contenciosos], si bien con *algunas particularidades que la singularizan*, una de las cuales es que la misma es ejercida por un funcionario *administrativo*, cual es el Registrador de la Propiedad". (Énfasis suplido.) *La importancia de este reconocimiento estriba en que esta teoría excluye la idea de que el Registrador sea un juez que adjudica derechos.*

■ Así, como hemos visto, del Art. 64 de la Ley Hipotecaria, *supra*, se desprende que el objeto de la calificación es el examen de la legalidad de las formas extrínsecas de los

documentos, la capacidad de las partes y la validez de los actos dispositivos contenidos en las escrituras, por lo que resulte de ellas y de los asientos del Registro.

█ El Art. 76.1 del. Reglamento Hipotecario, 30 L.P.R.A. sec. 2003–76.1, edición especial, aclara que el Registrador considerará como faltas de legalidad "todas las que afecten, tanto a las formas de los documentos como a la eficacia de las obligaciones o derechos contenidos en los mismos, siempre que resulten del texto de dichos documentos o puedan conocerse por la simple inspección de ellos". De ambos textos se desprende que al Registrador le está prohibido tomar conocimiento de materia extraña al Registro y a los documentos presentados. "En el procedimiento registral la prueba está tasada; . . . los Registradores calificarán los títulos por lo que resulte de ellos y de los asientos del Registro." J.L. Lacruz Berdejo y F. Sancho Rebullida, *Derecho Inmobiliario Registral*, Barcelona, Librería Bosch, 1977, pág. 354.

█ Aunque, ciertamente, cuando se trata de documentos notariales el Registrador tiene facultades calificadoras más amplias que le permiten comprobar si el acto jurídico otorgado es válido o nulo, cuando el negocio está sancionado por un tribunal de justicia debe descansar en la presunción de validez de la sentencia.

█ Sobre este extremo, notamos que aquí el Registrador también fue más allá de lo permisible al ignorar la sentencia en cuanto al aspecto jurisdiccional. Cualesquiera dudas debieron quedar esclarecidas y superadas al establecerse, como cuestión de hechos, la sumisión voluntaria de la Autoridad, lo cual el Tribunal Superior hizo constar expresamente en la página seis (6) de su sentencia. Definitivamente esa determinación judicial no era revisable por el Registrador.

■ En resumen, un Registrador no puede revisar determinaciones de hecho y de derecho de un tribunal; mucho menos adjudicar derechos. Concluir que la Autoridad no había aprobado la transacción y "'que el título de los terrenos permutados deb[ía] revertirse a dicha Agencia'" (alegato del Registrador recurrido, pág. 11) es prueba fehaciente de que el Registrador recurrido actuó como juez y obvió la máxima de que el Registro no da ni quita derechos, y que su función no tiene por objeto declarar la existencia o inexistencia de un derecho dudoso. *Muller Vergara v. Registrador*, supra, pág. 595. Ello es materia de la exclusiva competencia de los tribunales.

## VI

Al evaluar el quinto señalamiento de error, a modo de paréntesis, debemos adelantar que de la opinión y sentencia del Tribunal Superior, Sala de San Juan —que se sometió al Registro como documento complementario— surge que la legalidad de la transacción fue específicamente objeto de controversia judicial. En síntesis, dicho tribunal resolvió que la permuta era jurídicamente válida y que estaba acorde con las disposiciones de la Ley Núm. 107 de 3 de junio de 1974 y de la Ley Núm. 33 de 10 de mayo de 1976, *supra*.[4]

---

[4] Dicho tribunal expuso así sus fundamentos:

"2. La Ley [107] del 3 de julio de 1974[,] según se enmendó por la Ley Núm. 33 del 10 de mayo de 1976[,] no proh[í]be la permuta acordado por cuanto:

"a. no se trata de terrenos distribu[i]dos bajo el Título VI de la Ley de Tierras o como fincas familiares;

"b. constituye un fin público legítimo el permutar 501.5 cuerdas pertenecientes a la Autoridad de Tierras con un valor de $2,106,550.00 por 464 cuerdas pertenecientes a la parte demandante con un valor de $2,500,000.00, según determinado por la propia Junta de Gobierno de la Autoridad de Tierras; particularmente cuando al así hacerlo, se finiquita un litigio entablado por la suma de $10,000,000.00 contra la Corporación Azucarera, una corporación pública 'hermana' de la Autoridad de Tierras;

"c. el Secretario de Agricultura aprobó la permuta al votar a su favor en la reunión de la Junta de Gobierno de la Autoridad de Tierras del 20 de octubre de

Como consecuencia de ese pronunciamiento, dicho tribunal resolvió que "[l]os Registradores de la propiedad donde [sic] se deban inscribir las fincas objeto de la permuta deberan inscribir dichas fincas sin requerir aprobación previa de la Junta de Planificación[,] a tenor con lo dispuesto en 28 L.P.R.A. sec. 594, *ya que el Tribunal determinó que dicha disposición legal no es aplicable a los hechos [del] caso*". (Énfasis suplido.) Apéndice VII, pág. 82.

■ *Según expusiéramos con anterioridad, la sentencia aludida no fue objeto de revisión ante el Tribunal Supremo.* Por ende, no nos corresponde en este recurso gubernativo hacer indirectamente lo que, en tiempo, ninguna de las partes solicitó. "Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la *Ley del Caso.* No pueden revisarse." (Énfasis suplido.) *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 704 (1987). Véanse: *Candelaria v. Mun. de Ceiba*, 114 D.P.R. 155, 156–157 (1983); *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91, 94 (1974); *Don Quixote Hotel v. Tribunal Superior*, 100 D.P.R. 19, 29–30 (1971); *Srio. del Trabajo v. Tribunal Superior*, 95 D.P.R. 136, 140 (1967); *Martínez v. Tribunal de Distrito*, 69 D.P.R. 552, 555 (1949). Por tal razón nos limitaremos a examinar si el Registrador podía negarse

---

1983 y por tal razón él está ahora impedido de negar que los terrenos a permutarse no son necesarios para otros programas agrícolas; *International General Electric v*[.] *Concrete Builders*, 104 D.P.R. 871 (1976)[;]

"d. el Director Ejecutivo·de la Autoridad de Tierras, quien determinó en abundante correspondencia con la Secretaria de Recursos Naturales que los terrenos a permutarse estaban disponibles para tal propósito, es decir, no eran necesarios para el programa de su agencia, está también impedido de alegar ahora lo contrario. *International General Electric v*[.] *Concrete Builders*, supra.

"En atención a las anteriores conclusiones, *se resuelve que la permuta acordada no ·contraviene ninguna norma jurídica y que la misma constituye un contrato válido y accionable a tenor con el Derecho vigente.*" (Énfasis suplido.) Apéndice VII, pág. 81.

a inscribir el título a favor de los recurrentes tal y como el Tribunal Superior ordenó.

◼ La regla general es que un Registrador no puede intervenir con las determinaciones judiciales. *Sánchez González v. Registrador*, 106 D.P.R. 361, 376 (1977); *Ruiz-Sierra v. Registrador*, 103 D.P.R. 578 (1975); *Caballero v. Registrador*, 35 D.P.R. 617 (1926). "[C]uando se trata de documentos judiciales, la propia Ley Hipotecaria le asigna al Registrador una facultad calificadora más limitada." (Énfasis suprimido.) *P.R. Prod. Credit Assoc. v. Registrador*, supra, pág. 236.

Sobre este particular, el Art. 64 de la Ley Hipotecaria, *supra*, dispone:

> En cuanto a los documentos expedidos por la Autoridad Judicial, la calificación expresada se limitará: (1) a la jurisdicción y competencia del tribunal; a la naturaleza y efectos de la resolución dictada si ésta se produjo en el juicio correspondiente; y si se observaron en él los trámites y preceptos esenciales para su validez; (2) las formalidades extrínsecas de los documentos presentados; y (3) a los antecedentes del Registro.

Por su parte, el Reglamento Hipotecario especifica que:

> Las determinaciones judiciales respecto a los hechos y derechos que corresponden a las partes envueltas en un litigio a tenor con el artículo 67 de la Ley [30 L.P.R.A. sec. 2270] no podrán ser objeto de calificación por el Registrador sin perjuicio a lo dispuesto en el artículo 64 de la Ley [30 L.P.R.A. sec. 2267] tocante a los documentos expedidos por la autoridad judicial. 30 L.P.R.A. sec. 2003-79.1, edición especial.

◼ Un examen de estas disposiciones es suficiente para concluir que en este recurso no están presentes los elementos de algunas de las excepciones reconocidas a la regla general. Por el contrario, la determinación del Tribunal Superior fue de *naturaleza sustantiva*, terreno al que no tiene acceso el Registrador como funcionario ejecutivo. Resolver

lo contrario sería sancionar la indeseable práctica —rechazada una y otra vez por nuestro sistema registral inmobiliario— de que un Registrador puede actuar como Juez. *Cabassa v. Registrador*, 116 D.P.R. 861, 864 (1986); *Cabrer v. Registrador*, 113 D.P.R. 424, 429 (1982); *Muller Vergara v. Registrador*, supra, pág. 596. Más grave aún, si permitiéramos que un Registrador revisara una sentencia emitida por un tribunal —como en este recurso gubernativo— en la práctica, este funcionario ejecutivo se convertiría en juez de jueces. *P.R. Prod. Credit Assoc. v. Registrador*, supra. Bajo nuestro diseño constitucional vigente, ello es insostenible.

Aquí surge de la propia sentencia que el Tribunal Superior pasó juicio sobre el aspecto de aprobación previa del negocio por la Junta de Planificación. Después de una evaluación ponderada del estado de derecho, concluyó que dicho requisito no era aplicable a las circunstancias particulares del caso. Así juzgada la cuestión y habiéndose convertido esta determinación en la ley del caso, al no solicitarse revisión para los registradores era ineludible acatarla. "El discernimiento judicial sobre este particular debe ser suficiente para el Registrador de la Propiedad." *Cordero Crespo v. Registrador*, 88 D.P.R. 826, 834 (1963). Véase *Rosado v. Registrador*, 71 D.P.R. 553 (1950). En resumen, le estaba vedado al Registrador sustituir el criterio del Tribunal Superior, Sala de San Juan, por el suyo propio. Erró al así hacerlo.

## VII

El sexto señalamiento, de ordinario, no ameritaría mayor discusión si no fuera por ciertas expresiones del Registrador vertidas en su alegato. Acepta que notificó como deficiencia la incomparecencia del Departamento de Recursos Naturales "para destacar el hecho de que sin ser parte en el pleito, y sin que el Tribunal adquiriera jurisdicción sobre el

mismo, informa sobre negociaciones efectuadas entre las partes, dicho Departamento y la Autoridad de Tierras, según expresiones del Tribunal, a la página 2 de la sentencia, párrafos segundo y tercero. Siendo el efecto de tal participación inocuo en cuanto al efecto de la sentencia y de la transacción registral, lo destacamos *como parte de la estrategia que se utilizó en el proceso al darle* participación a entidades y personas que nada tenían que ver con el pleito, y que no vemos por [qué] *motivaciones promovieron o presionaron el arreglo*". (Énfasis suplido.) Alegato del Registrador recurrido, pág. 15.

█ Resultan inquietantes estas expresiones. Ponen en entredicho las actuaciones del Registrador. Evidencian un ánimo prevenido inexplicable. Dejan entrever que no sólo pretendió actuar como juez, sino más bien en función clásica de abogado de una parte. Ello es incompatible con la naturaleza de su cargo.

█ Nuestro ordenamiento jurídico, tanto en el orden sustantivo como en el procesal, está apuntalado en un esquema constitucional de separación de poderes. Como tal, dispone las vías y los remedios apropiados para que un contratante pueda impugnar la validez o eficacia de un negocio si existieran razones para ello. Esa impugnación, de ocurrir, sólo puede hacerse en los tribunales de justicia o en algún otro organismo especializado expresamente facultado por ley. El Registro no tiene esa función. No puede convertirse en un estrado ni concebirse como foro para adjudicar esos derechos y controversias. Incidió el Registrador una vez más.

Por los fundamentos expuestos, *se dictará sentencia revocatoria y se ordenará la inscripción de las escrituras.*