Opinión de conformidad emitida por el
Juez Presidente Se-ñor Hernández Denton.
Estamos conformes con la sentencia de este Tribunal sobre la calificación final emitida por la Hon. Registradora de la Propiedad de Humacao, la cual denegó la inscripción en el Registro de la Propiedad de las escrituras de hipoteca en controversia. No obstante, consideramos preciso expre-sarnos de forma particular para hacer constar nuestra po-sición sobre la controversia que origina este recurso gubernamental.
El caso de autos requiere que determinemos si un docu-mento denominado “Hipoteca en Garantía de Pagaré con Vigencia Extendida”, en el cual se busca garantizar una obligación principal evidenciada en un pagaré que vence a la presentación y establecer un término de vigencia para la hipoteca mayor de veinte años, viola las disposiciones de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. 2001 et seq. (Ley Hipotecaria). En particular, debemos re *75 solver si esta escritura puede inscribirse en el Registro de la Propiedad.
HH
La hipoteca se concibe como un “ ‘derecho real de reali-zación del valor, en su función de garantía de una obliga-ción pecuniaria, de carácter accesorio e indivisible, de cons-titución registral, que recae directamente sobre bienes inmuebles, ajenos y enajenables, que permanecen en la po-sesión del propietario’ J.M. Chico y Ortiz, Estudios sobre Derecho Hipotecario, 3ra ed., Madrid, Ed. Marcial Pons, 1994, T. II, pág. 1282, citando a Roca Sastre. El Código Civil dispone los requisitos esenciales para su constitución:
(1) Que se constituya para asegurar el cumplimiento de una obligación principal.
(2) Que la cosa pignorada o hipotecada pertenezca en pro-piedad a la persona que la empeña hipoteca.
(3) Que las personas que constituyan la prenda o la hipoteca tengan la libre disposición de sus bienes o en caso de no te-nerla, se hallen legalmente autorizadas al efecto. (Enfasis suplido.) Art. 1756 (31 L.P.R.A. sec. 5001).
De igual forma, es requisito indispensable para que una hipoteca quede debidamente constituida el que conste en una escritura pública y se inscriba en el Registro de la Propiedad. Art. 1774 del Código Civil, 31 L.P.R.A. see. 5042; Bco. Central Corp. v. Yauco Homes, Inc., 135 D.P.R. 858 (1994).
De los requisitos esbozados es preciso enfatizar el carác-ter accesorio del derecho real de hipoteca. Por su natura-leza como derecho de garantía, la accesoriedad es un requi-sito esencial e indispensable para su constitución. Así, la hipoteca está subordinada a la obligación principal en su existencia y extinción. Liechty v. Descartes Saurí, 109 D.P.R. 496 (1980). Véase, además, L. Muñoz Morales, Lec-ciones de Derecho Hipotecario, San Juan, Ed. U.P.R., 1946, T. II, pág. 15. Es decir, carece de objeto el contrato de hi- *76 poteca cuando no existe una obligación principal que garantizar. Gautier v. Registrador de Humacao, 24 D.P.R. 704 (1917). Por lo tanto, un contrato de hipoteca requiere de la existencia de dos figuras jurídicas, a saber, una obli-gación principal y la hipoteca en sí, la cual sirve de garan-tía al acreedor de la primera. Carreras v. Am. Colonial Bank, 35 D.P.R. 90 (1926). Como señala el ilustre trata-dista Ramón Roca Sastre, la hipoteca no es un derecho in-dependiente sino que vive al servicio de un crédito. R. Roca Sastre, Derecho Hipotecario, 6ta ed., Barcelona, Ed. Bosch, 1968, T. IV, Vol. I, pág. 190.
Según la Ley Hipotecaria,(1) la obligación principal o el crédito garantizado por la hipoteca puede evidenciarse en un título transferible por endoso o al portador.(2) En tales casos, el gravamen hipotecario queda constituido desde que se otorga e inscribe la hipoteca. Desde ese momento, existe un deudor conocido, un acreedor o acreedores gené-ricos —no importa el nombre, sino más bien el carácter de endosatarios o de tenedores— una obligación determinada y una garantía de ésta. Srio. de Hacienda v. Tribunal Superior, 95 D.P.R. 436 (1967). En síntesis, es posible consti-tuir una hipoteca para garantizar los títulos transferibles por endoso o al portador siempre que se cumpla con los demás requisitos para su constitución, como el otorga-miento de una escritura pública y la inscripción en el Re-gistro de la Propiedad.
En el caso del derecho real de hipoteca, la inscripción es de naturaleza constitutiva. Art. 1774 del Código Civil, supra. Es decir, si la hipoteca no se inscribe en el Registro *77 de la Propiedad, no adviene a la vida jurídica. En armonía con lo anterior, para que un documento tenga acceso al Registro de la Propiedad debe cumplir con ciertos princi-pios hipotecarios de la Ley Hipotecaria. En particular, el principio de especialidad —que cobra mayor importancia en el caso del derecho real de hipoteca— exige la especifi-cación e individualización de las fincas, los derechos que recaen sobre ellas y los titulares de dichos derechos. L. Rivera Rivera, Derecho Registral Inmobiliario Puertorri-queño, 2da ed., San Juan, Jurídica Eds., 2000, pág. 210. En otras palabras, la especialidad requiere que los documen-tos que se presenten en el Registro de la Propiedad sean claros y específicos en cuanto al contenido del derecho, su extensión y su titularidad. Cabañas v. Registrador, 8 D.P.R. 73 (1905).
En particular, la Ley Hipotecaria requiere, entre otras cosas, que en la escritura de hipoteca se detallen circuns-tancias como la descripción del bien, el importe del crédito y la fecha de vencimiento. Rivera Rivera, op. cit, pág. 486. En cuanto a las hipotecas en garantía de títulos endosables o al portador, el Art. 196 de la Ley Hipotecaria, 30 L.P.R.A. see. 2615, refleja con mayor rigor el principio de especiali-dad al disponer los pormenores que deben constar en este tipo de escrituras. Así, además de las circunstancias pro-pias de la constitución de todo crédito hipotecario, se deben incluir las relativas al “número y valor de los títulos que se emitan, la serie o series a que los mimos correspondan, la fecha o fechas de la emisión, el plazo y forma en que han de ser amortizados y cualquiera otras que sirvan para deter-minar las condiciones de dichos títulos”. 30 L.P.R.A. see. 2615.
Así, pues, vemos cómo la vigencia de la hipoteca es una de las circunstancias que debe constar en cualquier escri-tura de hipoteca. Su inclusión responde a la necesidad de que los terceros que tengan derechos sobre la propiedad conozcan con exactitud la vida del gravamen hipotecario. *78 Además, la vigencia de la hipoteca va a determinar el mo-mento cuando puede cancelarse su asiento. Por todo ello, del Registro de la Propiedad debe surgir de forma clara y precisa la vigencia de la hipoteca. De no ser así, se viola el principio de especialidad con la consecuencia de que el do-cumento no podrá tener acceso al Registro de la Propiedad.
En cuanto a la vigencia de la hipoteca, cabe señalar que, como consecuencia del principio de accesoriedad, ésta no es del todo independiente de la vigencia de la obligación principal. Por el contrario, el carácter accesorio del derecho real de hipoteca influye de una manera decisiva en su na-cimiento, vida y desarrollo. Chico y Ortiz, op. cit, pág. 1691. De este modo, la norma general es que la duración de la hipoteca va a ser la misma que la de la obligación principal. Sobre este particular, afirma Puig Brutau que no tiene razón de ser la hipoteca considerada aisladamente, sino como garantía de un derecho de crédito. íd., pág. 1691.
No obstante, reconocemos que existen otros supuestos en los que la hipoteca puede tener una vigencia diferente a la de la obligación principal. Se trata, por ejemplo, de aque-llos casos en los que las partes convienen en que la garan-tía hipotecaria tenga una vigencia menor a la de la obliga-ción principal que garantiza. No obstante, en virtud del principio de accesoriedad, nunca podrá ser a la inversa. Sobre este particular, resulta pertinente lo expresado por Roca Sastre en cuanto a que estos casos “no se refiere [n] a hipotecas en garantía de obligaciones a término o condición resolutoria, pues [en] éstas, expirado el plazo o cumplida la condición, el crédito queda extinguido, y, por consecuencia también la hipoteca; aquí se está ante una hipoteca consti-tuida con una duración predeterminada, o cuya subsisten-cia se ha hecho depender de un hecho futuro e incierto de efecto resolutorio”. Sin embargo, esa no es la situación en el caso ante nuestra consideración.
Ahora bien, para atender debidamente la controversia que nos fue planteada, debemos determinar cuál es la vi- *79 gencia de un pagaré hipotecario vencedero a la presenta-ción para así concluir si en este caso se violó el carácter accesorio de la hipoteca y el principio de especialidad. Para ello, debemos examinar las disposiciones de la Ley de Ins-trumentos Negociables y Transacciones Bancarias (Ley de Instrumentos Negociables), 19 L.P.R.A. sec. 501 et seq.
B. El Art. 2-104(a) de la Ley de Instrumentos Negocia-bles, 19 L.P.R.A. sec. 504(a), dispone que un “instrumento negociable” es una promesa u orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el instru-mento: (1) es pagadero al portador o a la orden al momento de su emisión, o cuando primero adviene a la posesión un tenedor, o (2) es pagadero a la presentación o en una fecha específica. De la disposición transcrita surge la alternativa de constituir un pagaré con fecha de vencimiento a la presentación. A esos fines, el Art. 2-108 (19 L.P.R.A. see. 508) dispone que un pagaré es pagadero a la presentación cuando: (1) en el propio documento se indica que es paga-dero, (2) el tenedor lo exija o (3) no se especifica ninguna fecha de pago.
Aclaramos, sin embargo, que aunque el tenedor de un instrumento negociable pagadero a la presentación puede elegir cuándo cobrarlo, ello no significa que pueda esperar eternamente. En atención a esos casos, la propia Ley de Instrumentos Negociables dispone un plazo prescriptivo para exigir su cobro. M.R. Garay Auban, Derecho cambia-rio de Estados Unidos y Puerto Rico: Código Uniforme de Comercio de EE.UU, Ley de Transacciones Comerciales de Puerto Rico, Ponce, Ed. Rev. Der. Pur., 1999, pág. 75. En específico, el Art. 2-118(h) dispone que “ [i]ndependiente de cualquier disposición en contrario aquí contenida, una ac-ción para exigir el cumplimiento de una obligación, de una parte de pagar un pagaré garantizado por una hipoteca sobre bienes inmuebles, y todo interés devengado por tal obligación, deberá iniciarse dentro del término dispuesto *80 por la sec. 5294 del título 31 para el ejercicio de la acción hipotecaria”. 19 L.P.R.A. sec. 518(h). El Art. 1864 del Có-digo Civil, 31 L.P.R.A. see. 5294, establece un plazo pres-criptivo de veinte años para la acción hipotecaria.
Así, pues, vemos como la Ley de Instrumentos Negocia-bles nos refiere a la sección del Código Civil que regula el término prescriptivo de la acción hipotecaria. Debemos concluir que el crédito evidenciado en un pagaré hipoteca-rio vencedero a la presentación es exigible en cualquier momento, pero nunca en exceso del término de veinte años para el ejercicio de la acción hipotecaria. Por ende, luego de transcurrido el término de veinte años desde el momento de la inscripción de la hipoteca en el Registro de la Propie-dad, el tenedor de dicho pagaré no tiene acción para exigir su cumplimiento.
C. Finalmente, debemos examinar la normativa en re-lación con la prescripción de la acción hipotecaria, ya que Westernbank alega que el término de vigencia de la hipo-teca señalado en la escritura se refiere al término de la acción hipotecaria y que puede pactarse en exceso de veinte años. En primer lugar, aclaramos que la prescrip-ción tiene lugar por mandato de ley. ESJ Towers, Inc. v. Registrador, 150 D.P.R. 298 (2000); Chico y Ortiz, op. cit., pág. 1708. Precisamente, el Art. 1864 del Código Civil, supra, dispone que la acción hipotecaria prescribe a los veinte años y el Art. 180 de la Ley Hipotecaria establece que “[l]a acción hipotecaria prescribirá a los veinte (20) años, contados desde que pueda ser ejecutada”. 30 L.P.R.A. see. 2576. Lo anterior significa que dicho término de veinte años comienza a transcurrir el día en que vence el crédito o desde el momento cuando es exigible la obligación principal, según se consignó en el título. R. Roca Sastre, op. cit., pág. 1135; Rivera Rivera, op. cit., pág. 509. Conforme a lo resuelto anteriormente, un pagaré hipotecario vencedero a la presentación es exigible desde su constitución, y en cual-quier momento, pero nunca luego de transcurrido un tér- *81 mino ininterrumpido de veinte años desde que se inscribe la hipoteca en el Registro de la Propiedad. Por lo tanto, el plazo prescriptivo para ejercer la acción hipotecaria no puede exceder esos veinte años. Lo anterior como conse-cuencia de que, transcurrido dicho término, operara la prescripción extintiva del crédito hipotecario por ministe-rio de la ley. ESJ Towers, Inc. v. Registrador, supra.
En consonancia con lo anterior, el Art. 145 de la Ley Hipotecaria, 30 L.P.R.A. see. 2496, establece que los regis-tradores cancelarán las hipotecas que tengan más de veinte años de vencidas o, si no tienen término de venci-miento, de constituidas. En el caso de una hipoteca en ga-rantía de un pagaré vencedero a la presentación, en el que el término prescriptivo del pagaré comenzará a transcurrir desde la constitución de la hipoteca, ésta no puede expre-sar una vigencia mayor de veinte años. Conforme a ello, el Registrador de la Propiedad podrá cancelar el asiento de hipoteca una vez transcurrido dicho término. (3)
II
En los dos recursos gubernativos ante nuestra conside-ración, Westernbank alega que no existe ambigüedad al expresar que el pagaré hipotecario es “pagadero a la pre-sentación” y, por otro lado, disponer una vigencia para la hipoteca mayor de veinte años. Sostiene que la fecha de exigibilidad de la obligación principal representada por el pagaré es independiente y distinta de la duración que ten-drá la garantía hipotecaria del cumplimiento de dicho pagaré. Entendemos que no le asiste la razón.
A raíz del carácter accesorio del derecho real de hipoteca, no puede argumentarse que ésta es independiente de la *82 obligación principal que garantiza. Por el contrario, la norma general es a los efectos de que la vigencia de la hi-poteca depende de la vigencia de la obligación principal. Por esa razón, una escritura de hipoteca en garantía de un pagaré vencedero a la presentación no puede expresar, sin violar el principio de accesoriedad, que la hipoteca tendrá una vigencia superior a veinte años desde su inscripción. Lo anterior, como consecuencia de que el pagaré hipoteca-rio vencedero a la presentación no va a ser exigible trans-curridos veinte años desde la inscripción de la hipoteca en el Registro de la Propiedad.
Del mismo modo sostenemos que la posición de Wester-nbank contribuye a crear inexactitud registral cuando la obligación principal evidenciada mediante el pagaré a la presentación no sería exigible transcurrido el término inin-terrumpido de veinte años, mientras que el Registro de la Propiedad publicaría una hipoteca vigente. No estamos dispuestos a admitir tal resultado. En nuestro sistema re-gistral, los asientos se reputan exactos y concordantes con la realidad jurídica. Rivera Rivera, op. cit, pág. 279. Es por ello que al Registro de la Propiedad sólo tienen acceso los documentos válidos y perfectos. Kogan v. Registrador, 125 D.P.R. 636 (1990); U.S.I. Properties, Inc. v. Registrador, 124 D.P.R. 448 (1989). Por lo tanto, el Registrador de la Propiedad, en su facultad calificadora, debe velar siempre por la legalidad de dichos títulos.
En vista de lo anterior, estamos conformes con la sen-tencia emitida por este Tribunal, ya que las escrituras en controversia son contrarias al Derecho por ignorar el ca-rácter accesorio del derecho real de hipoteca, al establecer una vigencia para una hipoteca en garantía de un pagaré vencedero a la presentación mayor de veinte años.

 La Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria) dispone normas específicas para los casos de hipotecas en garantía de títulos endosables o al portador. Véase, a modo de ejemplo, el Art. 138 (30 L.P.R.A. see. 2462); el Art. 138 (30 L.P.R.A. see. 2614); Art. 138 (30 L.P.R.A. sec. 2615).

 Estas hipotecas se distinguen de las ordinarias en aspectos como su consti-tución, cesión y cancelación en el Registro de la Propiedad. J.M. Chico y Ortiz, Es-tudios sobre Derecho Hipotecario, 3ra ed., Madrid, Ed. Marcial Pons, 1994, T. II, págs. 1282 y 1547. No obstante, para efectos de la controversia ante nuestra consi-deración, no es preciso abundar en cuanto a estas diferencias.

 La importancia de la cancelación estriba en que, aun cuando se haya extin-guido la obligación principal y por consiguiente la garantía hipotecaria hiera del Registro de la Propiedad, no surtirá efecto frente aterceros hasta su cancelación. Art. 199 (30 L.P.R.A. see. 2618).