Rossy García, Juez Ponente
*845 TEXTO COMPLETO DE LA SENTENCIA
Por hechos ocurridos el 26 de marzo de 1993 en Escuela Juan Ponce de León, el Ministerio Público presentó acusaciones contra Héctor Ramos Rodríguez, por el delito de Asesinato en Primer Grado así como por infracción a los Arts. 6 y 8 de la Ley de Armas. En tal ocasión resultó muerto Angel Velázquez Aponte, joven estudiante de 16 años de edad. Luego del trámite de lugar y celebrado el juicio correspondiente, un jurado rindió veredicto de culpabilidad por todos los delitos imputados. El Tribunal de Primera Instancia Sala Superior de San Juan, Hon. Bárbara Sanfiorenzo, dictó sentencia el 14 de agosto de 1995 condenándolo a una pena de reclusión de noventa y nueve (99) años por el cargo imputado de asesinato y penas de 4 y 5 años, respectivamente, por la infracción a las referidas disposiciones de la Ley de Armas, para un total de 108 años de reclusión.
Inconforme el apelante y luego de haberle sido denegadas mociones de nuevo juicio presentadas al amparo de las Reglas 188(c) y 192 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, interpuso el recurso que nos ocupa. En éste imputa que incidió el foro de instancia al declararlo culpable con una prueba insuficiente para establecer su culpabilidad más allá de duda razonable; al denegar las mociones de nuevo juicio por él presentadas; así como al negarse a impartir al jurado las instrucciones específicas por él solicitadas.
Resolvemos que no se cometieron los errores imputados y que resulta procedente emitir sentencia confirmatoria de las apeladas.
I
Por la naturaleza de los errores señalados, se hace menester resumir la prueba desfilada en el juicio y aquellos extremos de las instrucciones al jurado pertinentes al último señalamiento de error imputado, ésta según reseñada en la Exposición Narrativa Estipulada de la Prueba que fue sometida por las partes, la que mereció la aprobación del foro de instancia.
La prueba de cargo inició con el testimonio del Sr. Angel Velázquez Andrade, padre de la víctima, cuyo testimonio fue a los efectos de que para el 26 de marzo de 1993 su hijo estudiaba en la Escuela Juan Ponce de León y que en dicha fecha fue a la referida escuela para identificarlo, toda vez que lo habían matado. (E.N.P., pág. 2).
Testificó luego Gabriel Jiménez Torres, testigo ocular de los hechos. Este declaró, en síntesis, que para el 26 de marzo de 1993 cursaba estudios en la Escuela Juan Ponce de León y que conocía a Edwin Rodríguez Torres, co-acusado en el caso, a quien identificó en corte abierta. En relación con éste declaró que lo conocía por haber asistido ambos a las mismas escuelas intermedia y superior, a saber, la Escuela José N. Gándara y la Escuela Juan Ponce de León, respectivamente. Identificó, además, al apelante Héctor Ramos Rodríguez, quien también cursó estudios en las referidas escuelas para el tiempo en que él estudiaba en éstas. Según por él atestado, para el 26 de marzo de 1993 cursaba el cuarto año de escuela superior. Indicó que en dicha fecha, como a las 12:30 del mediodía, se encontraba en unos banquitos que quedan frente al comedor escolar conversando con dos amigos, Eduardo Jaime y Luis Alicea, cuando observó que Angel, la víctima, salió por el final del pasillo. Al verlo pensaba saludarlo pero entonces éste dobló a mano derecha, "cuando de repente yo veo a Edwin y a Héctor que salen del pasillo, cada uno con un arma de fuego y pues cuando Angel [la víctima] mira para atrás, lo que hace es que se vuelve a virar y se tapa los oídos. Cuando se tapa los oídos, ellos empiezan a darle tiros a él,...ca[yendo] de rodillas con las manos en los oídos, entonces cayó de frente con las manos en el piso, arrodillado como si estuviese postrado hacia el frente, ahí le dan los últimos tiros, y se van corriendo por el portón de atras". (E. N. P., pág. 6). Continuó declarando que escuchó como 8 ó 9 disparos y que Angel quedó "postr[ado[" en el piso respirando rápidamente como agitado. Según su testimonio, se apresuró entonces al portón de afuera para ver por dónde se fueron los agresores, pero no vio nada. Indicó que regresó al lugar del incidente, le comenzó un ataque de nervios y empezó a llorar. Señaló que en ese momento empezó a llegar la gente, entre ellos el policía de la escuela, quien trataba de impedir que las empleadas del comedor lo tocaran porque se lo querían llevar para el hospital. Describió, además, las armas que Edwin y el apelante Héctor portaban, indicando que Edwin llevaba un arma oscura, grandecita, con el frente como cuadrado, y el apelante *846 llevaba un arma corta color niquelada.
Declaró entonces que luego del incidente se sentía mal y no podía dormir. Indicó que la directora de la escuela convocó una reunión con todos los estudiantes, invitando a los que hubieran visto el incidente a ayudar a esclarecer el caso. Que ello lo motivó a hablar con su maestra de salón hogar, con quien tenía más confianza, y le relató lo que había presenciado. Que luego se entrevistó con el agente Roberto Díaz, del C.I.C. de San Juan, quien tenía el caso asignado, relatándole también lo que había presenciado. A solicitud del agente prestó también una declaración jurada.
En tumo de contrainterrogatorio atestó que no conocía personalmente al apelante y que no mencionó el nombre de Héctor, el apelante, cuando prestó su declaración jurada. Intentó la defensa, además, impugnar la credibilidad del testigo en cuanto a la identificación. Posteriormente, en tumo de re-directo, declaró que cuando le estaban tomando la declaración jurada, "en esos momentos yo no me acordaba del nombre de Héctor, pero que sí sabía que se llamaba Héctor porque la maestra... cuando lo llamaba pues él respondía por ese nombre". (E.N.P., págs. 27-28). En lo que respecta a la descripción que él dio del apelante, se reiteró en el conocimiento previo que tenía de éste y en su identificación. (E.N.P., págs. 27-28).
Testificó luego Luis Mercedes Rodríguez, Investigador Forense, quien declaró sobre su intervención e identificó el Informe de Análisis, el que fue admitido en evidencia, así como de los hallazgos contenidos en dicho informe. Declaró así que el 26 de marzo de 1993 estaba de turno junto a la también Investigadora Forense, Daisy Serrano, personándose ambos a la Escuela Juan Ponce de León, donde había un joven estudiante muerto, quien resultó- ser Velázquez Aponte. (E.N.P., pág. 31). Indicó, además, que como parte de su investigación entrevistó al agente Roberto Díaz y al policía custodio de la escena, Roberto Cruz. (E.N.P. pág. 32).
Se ofreció luego en evidencia el Informe de Balística, el que también fue admitido sin oposición. (E.N.P., pág. 31).
Surge de la exposición narrativa que el día 3 de abril de 1995, en este estado de los procedimientos, el co-acusado Edwin Rodríguez Torres renunció al jurado y formuló alegación de culpabilidad por los delitos imputados, eliminándose una alegación de reincidencia contra él formulada. Tal alegación de culpabilidad fue admitida por el tribunal de instancia. Surge, además, que como parte de tal alegación preacordada, "el acusado no prestar[ía] testimonio alguno en ningún caso, ni ser[ía] citado como testigo de defensa, o del Ministerio Público" (E.N.P., pág. 32). La representación legal del apelante procedió entonces en dicha ocasión a solicitar la citación de dicho co-acusado, petición que le fue denegada por el foro de instancia a base de lo convenido en la alegación preacordada según ya indicado. Se señaló así la continuación de la vista para el 5 de abril de 1995.
Llamado el caso el día asignado para la continuación de la vista, la representación legal del apelante solicitó nuevamente la citación del co-acusado Edwin Rodríguez Torres, lo que suscitó una nueva argumentación. Ello dio base a que el foro de instancia, reconsiderando su dictamen previo, ordenara la citación de Rodríguez Torres como testigo de defensa. (E.N.P., págs. 32-35).
En esta etapa de los procedimientos, y habiéndose declarado culpable el co-acusado Edwin Rodríguez Torres, la representación legal del apelante preparó y entregó al tribunal una instrucción, con la súplica que le fuera leída al jurado, que era como sigue:

"Instrucción al Jurado sobre Alegación de Culpabilidad del Coacusado

En este caso, el co-acusado Edwin Rodríguez Torres, luego de haber comenzado el juicio se declaró culpable de todos los delitos que se le acusaban, aceptando que él participó en los hechos que se le imputaban. Esa decisión que tomó el Sr. Edwin Rodríguez Torres fue una individual de su parte, que no significa nada ni tiene que ver nada con el Sr. Héctor Ramos Rodríguez.

Por el contrario la alegación de el [sic] Sr. Héctor Ramos Rodríguez es de que es inocente y de que no participó en los hechos por los cuales ha sido acusado. De hecho al Sr. Héctor Ramos Rodríguez se le presume inocente.

*847 Como les indiqué anteriormente, ustedes deben resolver de acuerdo con la apreciación de la prueba, en cuanto a cada acusado en particular, deforma independiente y separada. En virtud de ello deben apreciar y determinar la culpabilidad o inocencia de cada acusado individualmente y separadamente." (E.N.P., págs. 36-37.)
La instrucción dada por el Tribunal al Jurado fue la siguiente:
"Ustedes notarán que en la mañana de hoy, hay uno de los acusados que no se encuentra y la explicación es la siguiente: El co-acusado Edwin Rodríguez luego de haber comenzado este juicio, hizo una alegación ante el Tribunal de culpabilidad, aceptando que él participó en los hechos que se le imputaban. Esa decisión que tomó el Sr. Edwin Rodríguez, es una individual de su parte y no significa ni tiene nada que ver con el proceso que se está llevando a cabo en cuanto a Héctor Ramos Rodríguez. Recuerden que Héctor hizo una alegación de no culpabilidad y precisamente eso es lo que está ventilando, la prueba que tiene que desfilar el Sr. fiscal, es la que ustedes van a evaluar para determinar sobre eso. Como les indiqué anteriormente, tienen que resolver de acuerdo con la apreciación de la prueba en cuanto a cada acusado en particular. Ya uno salió, por lo tanto, lo que quiere decir es que ustedes van a hacer la misma evaluación en cuanto al que queda. Van a evaluar con la misma objetividad la prueba, con la misma instrucción que le habíamos dado, que el abogado a base de preguntas, le había indicado a los efectos, de que la prueba va dirigida, hay que evaluarle en cuanto a cada una de las personas imputadas separadamente y eso es exactamente lo que ustedes van a hacer. Nos vamos a olvidar del otro co-acusado y sencillamente vamos a estar viendo la prueba en cuanto a Don Héctor. Espero que no haya alguna duda. ¿Tienen alguna duda? Vamos entonces a continuar". (E.N.P., pág., 3738).
Surge de la exposición narrativa que en ese momento ningún reparo a dicha instrucción formuló la representación legal del apelante. Tampoco solicitó instrucción adicional alguna, procediéndose con la continuación de los procedimientos.
Se aportó entonces por el Ministerio Público el testimonio de la Sra. Daisy Serrano Rosado. Esta atestó a los efectos de que es Investigadora Forense y que el 26 de marzo de 1993, respondiendo a una llamada, se personó con su compañero Luis Mercedes a la escuela Juan Ponce de León para realizar una investigación relacionada con la muerte del joven Angel Velázquez Aponte. Indicó que tomó unas cincuenta y nueve (59) fotos a color, así como un "video" del lugar de los hechos de la ubicación de la escuela, del pasillo, del lugar donde estaba el cadáver y de los casquillos. Se admitieron en evidencia en ese momento las fotos identificadas de la 4(A) a la 4(F).
El próximo testigo lo fue el agente Roberto Díaz Rivera, de la División de Homicidios de Vega Baja, quien para el 26 de marzo de 1993 era agente investigador en la División de Homicidios en San Juan. Atestó que en dicha fecha, y como parte de sus funciones, se personó junto al Fiscal René Arrillaga, a la Escuela Juan Ponce de León para investigar una muerte. Se entrevistó con la directora de la escuela y observó el cadáver de la víctima que presentaba impactos de proyectiles en diferentes partes de su cuerpo. Indicó, además, que los investigadores habían ocupado como evidencia alrededor de cinco (5) casquillos de calibre nueve (9) milímetros. Declaró que cinco días más tarde conoció a Gabriel Jiménez Torres, quien le fue presentado por una profesora de la Escuela Juan Ponce de León. Luego de entrevistarlo lo citó a la Fiscalía de San Juan, donde prestó una declaración jurada. Indicó que éste le informó dónde se encontraba y con quién; cómo llegaron las personas y cómo dispararon contra el perjudicado. También les indicó el tiempo que hacía que conocía a las personas que ultimaron a la víctima, indicando que habían sido estudiantes en el mismo plantel escolar.
Concluyó el Ministerio Público su prueba de cargo con el testimonio de la Dra. María Conte Miller, patóloga forense. Esta declaró sobre la autopsia por ella practicada en el cadáver de la víctima y sus hallazgos internos y externos. Identificó luego el informe de autopsia preparado, el que tenía su firma, siendo el mismo admitido en evidencia. Testificó así que en dicho caso la muerte se debió a múltiples heridas de bala, presentando el cadáver ocho (8) impactos de entrada. Explicó, además, la trayectoria que siguió cada proyectil. En esta etapa se sometió y admitió en evidencia el video de la escena que ftie tomado por la Investigadora Forense, Sra. Daisy Serrano Rosado, éste según editado por orden del tribunal.
*848 El 18 de abril de 1995, día dispuesto para la continuación de la vista, inició el acusado apelante la presentación de su prueba. Esta consistió del testimonio de los testigos Javier Gerena Torres, Juan Kuilan Collazo, Aomar Rodríguez Guivas y Cinthia Alicea Cotto.
El testimonio de Javier, de 28 años de edad y quien atestó conocer al acusado apelante desde la infancia, fue a los efectos de indicar que el 26 de marzo de 1993, a eso de las 12:15 P.M., aproximadamente, se encontraba detrás del Caserío San José junto a su hermana Marilin y una amiga de nombre Pulu. Atestó que entonces vio a Héctor y lo llamó para pedirle un cigarrillo, a lo que éste accedió, iniciándose una conversación entre ellos. Indicó’que como a los diez (10) minutos sonaron "como tres o cuatro martillazos". Que entonces Héctor le dijo que iba a ir a la Escuela Juan Ponce de León a buscar a su novia y que iba a averiguar qué había pasado "[ya] que minutos antes habían traído la noticia de que habían matado a alguien en la escuela". En el tumo de contrainterrogatorio, y a preguntas del fiscal, declaró que se enteró de la muerte de Angel Velázquez por El Vocero que lo publicó en primera plana, y que no habló con Héctor de la muerte del muchacho hasta que lo cogieron y salió bajo fianza. Indicó que a Edwin, el otro co-acusado, lo conoce igual que a Héctor "desde chamaquitos, criados allí mismo en el residencial".
El segundo testigo de defensa, Juan Kuilan Collazo, de 20 años de edad, declaró que el viernes 26 de marzo de 1993 llegó a su casa entre las 12:15 y 12:30 del mediodía y fue a buscar al apelante para que le ayudara a lavar el carro como era costumbre. Que éste le indicó que no podía ayudarle porque "se dirigía a la escuela Juan Ponce de León a buscar a su novia, Cindi, porque parecía que en la escuela habían matado a alguien".
Por su parte, Aomar Rodríguez Guivas, de 19 años de edad, atestó que el 26 de marzo de 1993 estaba almorzando con su madre cuando escuchó tres martillazos. Que salió de su casa y una persona le comentó que habían matado a alguien en la escuela Juan Ponce de León. Que entonces vio al apelante y comentaron entre ellos mismos, acompañándolo entonces a buscar a su novia a la referida escuela.
Declaró entonces Cinthia Alicea Cotto, apodada Cindi, quien indicó que había sido novia del apelante por siete (7) meses. Atestó que el 26 de marzo de 1993, a eso de las 12:30 del mediodía, se encontraba frente a la escuela con dos amigas, cuando escuchó disparos. Indicó que corrió hacia adentro de la escuela por el nerviosismo y vio al muchacho en el suelo y comenzó a llorar. Que entonces se fue a casa de una amiga donde el acusado la fue a buscar y la consoló. Declaró también que cuando acusaron al apelante no se interesó en hablar con él porque ya no era novia de él.
Como prueba de refutación el Ministerio Público sentó a declarar a Minerva Collazo Rosado, madre del testigo de defensa Juan Kuilan Collazo. Su testimonio fue a los efectos de que conoce al apelante desde pequeño porque son vecinos. Indicó ésta que el 26 de marzo de 1993, alrededor de las 12:30, se encontraba con su nieta frente a una tiendita comprándole dulces cuando escuchó unas detonaciones. Que entonces la hija de la señora con quien estaba hablando en la tienda les dijo que habían matado a una persona en la escuela Juan Ponce de León. Atestó que inmediatamente, y mientras les estaban informando eso, ve a Héctor, el apelante, venir por la acera que hay entre el edificio donde ella vive y el de él, subir corriendo para su casa con pantalón corto; entrar a su apartamento; salir con un suéter, poniéndoselo, que se lo terminó de poner abajo; y salir corriendo del caserío como para ir para la escuela.
La defensa presentó entonces como prueba de subrefutación el testimonio de Calixto Pérez Torres, gerente en Pueblo de Monte Malí, quien declaró que Juan Kuilan Collazo fue empleado suyo desde julio de 1992 hasta mayo de 1993, a quien catalogó como empleado excelente, honesto y responsable, de quien nunca tuvo quejas.
La defensa aportó, además, el testimonio de la Sra. Eileen Jordán Piña, maestra de química en la Escuela Juan Ponce de León, procediendo luego las partes con sus respectivos informes al jurado. Impartió luego el foro de instancia las instrucciones correspondientes.
A base de la prueba antes reseñada, el jurado rindió veredictos de culpabilidad en todos los delitos imputados, luego de lo cual y admitidos los mismos, el foro de instancia emitió los fallos y sentencias *849 ahora apelados. Según expuesto, el aquí apelante fue condenado a las respectivas penas de reclusión consistentes de noventa y nueve (99) años por el cargo de Asesinato en Primer Grado, cuatro (4) años concurrentes entre sí por los dos cargos por infracción al Art. 6 de la Ley de Armas y cinco (5) años concurrentes entre sí por los dos (2) cargos por infracción al Art. 8 de este último estatuto.
II
Argumenta el apelante en su primer señalamiento de error que incidió el jurado al concluir que la prueba presentada por el Ministerio Público era suficiente para derrotar la presunción constitucional de inocencia. Resolvemos, contrario a tal contención del apelante, que la misma es suficiente en derecho para validar el fallo condenatorio que es ahora objeto de impugnación.
En nuestra jurisdicción, "el precepto constitucional que garantiza al acusado la presunción de inocencia [Art. 2 Sec. 11 Constitución del Estado Libre Asociado] exige que toda convicción siempre esté sostenida por prueba que establezca, más allá de duda razonable, todos los elementos del delito y la conexión del acusado con los mismos". Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 760-761 (1985). Dicho mandato constitucional, a su vez, fue incorporado en la Regla 110 de Procedimiento Criminal, R. 110, al proveer que:

"En todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. Si la duda es entre grados de un delito o entre delitos de distinta gravedad sólo podrá condenársele del grado inferior o delito de menor gravedad."

Viene así obligado el Ministerio Público no sólo a presentar prueba que conecte al acusado con la comisión del delito imputado, sino que la prueba tiene que contener un quántum más allá de duda razonable para que pueda ser constitucionalmente suficiente para sostener una convicción. En cuanto a este particular, se ha establecido que el quántum de evidencia que constitucionalmente se requiere para una convicción es aquél que establece una certeza moral que convence, sobre todos los elementos del delito y la conexión del acusado con éstos. Pueblo v. Pérez Rivera, 129 D.P.R. _ (1991), 91 J.T.S. 80, a la pág. 8966. Dicha prueba tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupaciones o en un ánimo no prevenido. Pueblo v. Rosaly Soto, 128 D.P.R. 729, 739 (1991); Pueblo v. Cabán Torres, 117 D.P.R. 645, 652 (1986). La insatisfacción con la prueba es lo que se conoce como duda razonable y fundada. Pueblo v. Cabán Torres, supra, a la pág. 652. Ahora bien, "ello no significa que toda duda posible, especulativa o imaginaria tenga que ser destruida. Sólo se exige que la prueba establezca aquella certeza moral que convence, que dirige la inteligencia y que satisface la razón". Pueblo v. Pagán Ortiz, 130 D.P.R. _ (1992), 92 J.T.S. 56, a la pág. 9480.
De otra parte, es norma que ha sido reiterada por nuestro Tribunal Supremo que la valoración de la prueba corresponde al foro primario. Por esa determinación de culpabilidad que hace el juzgador de los hechos a nivel de instancia es merecedora de gran deferencia por parte del tribunal apelativo, ello toda vez que, de ordinario, está en mejor posición para aquilatar la prueba testifical ya que fue el que oyó y vio declarar a los testigos. Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975). Así, en ausencia de error manifiesto, pasión, prejuicio o parcialidad, un tribunal apelativo no intervendrá en la apreciación que de la evidencia sometida hace el juzgador de hechos en el tribunal de instancia, ni con el veredicto condenatorio emitido por un jurado o el fallo inculpatorio de un magistrado. Pueblo v. Rivera Diodonet, 124 D.P.R. 469 (1988); Pueblo v. Cabán Torres, supra, a la pág. 654.
En el caso que nos ocupa hemos examinado minuciosamente la exposición narrativa de la prueba y encontramos que la prueba aportada por el Ministerio Público es suficiente en derecho para avalar el veredicto condenatorio que es objeto de impugnación. Un examen sereno, detallado y desapasionado de la declaración del testigo Gabriel Jiménez Torres, testigo ocular de los hechos y quien conocía a los acusados y, en particular, al aquí apelante por haber asistido todos a las mismas escuelas intermedia y superior, hace evidente que la misma estableció más allá de duda razonable todos los elementos del delito y la conexión del acusado apelante con los mismos. Además, el examen de la totalidad de la prueba, que incluyó también el testimonio de los agentes que intervinieron en la investigación del caso, un video editado de la escena del crimen, seis fotografías del lugar de los hechos, cinco casquillos de bala disparados calibre 9mm y tres proyéctiles, el correspondiente Informe de Autopsia *850 y una testigo de refutación para impugnar la defensa de coartada presentada por el apelante, no produce en nuestro ánimo una insatisfacción o intranquilidad de conciencia que amerite que intervengamos con la credibilidad que le mereciera el testimonio del referido testigo ocular al juzgador de los hechos. Concluimos así que tal prueba es suficiente para establecer los elementos de los delitos imputados, así como la identidad de los autores, entre ellos el aquí apelante. De otra parte, la prueba de coartada presentada por el apelante fue desmerecida por el jurado, quien evidentemente no le dio crédito alguno. En tales circunstancias y, en ausencia de pasión, prejuicio, parcialidad o error manifiesto por parte del foro de instancia, no habremos de intervenir con tal apreciación de prueba que dio base y plenamente sostiene los veredictos condenatorios que se pretenden impugnar.
III
Mediante el segundo, tercero y cuarto señalamiento de error pretende el apelante cuestionar la corrección del dictamen del foro de instancia al denegar la concesión de un nuevo juicio.
En lo que respecta al fundamento invocado al amparo de la Regla 188(c) de Procedimiento Criminal, a saber, que el veredicto o fallo es contrario a derecho o a la prueba, es la contención del apelante que la prueba aportada por el Ministerio Público es insuficiente para establecer su culpabilidad más allá de duda razonable. Al respecto basta con remitimos a lo ya antes expuesto para resolver que no se cometió tal error imputado. Según ya indicado, correspondía al jurado evaluar y dirimir, a base de la credibilidad que le merecieron los testigos, todo conflicto en cuanto a la prueba, responsabilidad que fue descargada y con cuyo resultado no habremos de intervenir. Tampoco nos resulta persuasiva la argumentación del apelante relacionada con las alegadas contradicciones del testigo ocular relacionadas con la confiabilidad y certeza de su identificación. Basta aquí con señalar que "el hecho de que existan contradicciones en las declaraciones de un testigo, eso de por sí sólo no justifica que se rechace dicha declaración en su totalidad si las contradicciones no son decisivas y si el resto del testimonio es suficiente para establecer la culpabilidad más allá de duda razonable". Pueblo v. Ramos Alvarez, 122 D.P.R. 287, 317 (1988). Habiéndose establecido la culpabilidad del acusado apelante más allá de duda razonable, no abusó de su discreción el foro de instancia al denegar tal solicitud de nuevo juicio.
Tampoco incidió el foro de instancia al denegar la moción de nuevo juicio presentada por el apelante predicada en el descubrimiento de nuevos elementos de prueba "de tal naturaleza que evidencian la inocencia del condenado". Se refería a una declaración que supuestamente habría de hacer el co-acusado Edwin Torres, quien según indicado se declaró culpable durante el proceso, a los efectos de que el apelante no participó ni tenía nada que ver con el asesinato por el cual dicho co-acusado se declaró culpable.
En Pueblo v. Morales Rivera, 115 D.P.R. 110 (1984), el Tribunal Supremo esbozó los criterios a considerarse por el tribunal sentenciador al adjudicar una moción de nuevo juicio fundada en el descubrimiento de nueva prueba, la cual sólo procederá si esta última: (1) no se pudo descubrir con razonable diligencia antes del juicio; (2) no es meramente acumulativa; (3) no impugna la pmeba aducida durante el juicio; (4) es creíble; y (5) probablemente produciría en resultado diferente. Además, dicha moción "va dirigida a la discreción del tribunal sentenciador por lo que denegada la misma, el foro apelativo no intervendrá con dicha determinación, a menos que se demuestre un claro e inequívoco abuso de discreción por parte del tribunal de instancia". Id.
Al dirigir nuestra atención a la situación particular del caso que nos ocupa, observamos que el testimonio interesado es el de un co-acusado que, luego de formular alegación de culpabilidad, fue puesto a disposición del apelante. Este testigo, luego de entrevistado, fue por él renunciado. No nos encontramos, pues, frente a prueba que no pudo ser descubierta con razonable diligencia antes o durante el juicio. De otra parte, el testimonio anunciado constituía prueba acumulativa, ya para reforzar su defensa de coartada, o bien para impugnar el testimonio no controvertido de Gabriel Jiménez Torres, testigo ocular que conocía al apelante previo al incidente y declaró que lo vio disparar contra la víctima a plena luz del día. Evidentemente, no cumplía dicho ofrecimiento con los criterios necesarios para su admisibilidad a los fines interesados, por lo que no incidió ni abusó de su discreción el foro de instancia al denegar la referida moción de nuevo juicio. Concluimos así que no se cometieron dichos errores imputados.
*851 IV
En su ultimo señalamiento de error cuestiona el apelante las instrucciones impartidas por el foro de instancia referentes a la alegación de culpabilidad del co-acusado Edwin Rodríguez Torres, así como aquélla relacionada con el video y fotografías que fueron admitidas en evidencia.
-A-
Argumenta el apelante primeramente, haciendo referencia a una expresión del juez de instancia al instruir al jurado luego de que el co-acusado Edwin Rodríguez formulara alegación de culpabilidad, que tal instrucción privó al acusado de un juicio justo e imparcial. La instrucción que le fue impartida al jurado fue la siguiente:
"Ustedes notarán que en la mañana de hoy, hay uno de los acusados que no se encuentra y la explicación es la siguiente: El acusado Edwin Rodríguez luego de haber comenzado este juicio, hizo una alegación ante el Tribunal de culpabilidad, aceptando que él participó en los hechos que se le imputaban. Esa decisión que tomó el señor Edwin Rodríguez, fue una individual de su parte y no significa ni tiene nada que ver con el proceso que se está llevando a cabo en cuanto a Héctor Ramos Rodríguez. Recuerden que Héctor hizo una alegación de no culpabilidad y precisamente eso es lo que está ventilando, la prueba que tiene que desfilar el Sr. Fiscal, es la que ustedes van a evaluar para determinar sobre eso. Como les indiqué anteriormente, tienen que resolver de acuerdo con la apreciación de la prueba en cuanto a cada acusado en particular. Ya uno salió, por lo tanto, lo que quiere decir es que ustedes van a hacer la misma evaluación en cuanto al que queda. Van a evaluar con la misma objetividad la prueba, con la misma instrucción que le habíamos dado, que el abogado a base de preguntas, le había indicado a los efectos, de que la prueba va dirigida, hay que evaluarle en cuanto a cada una de las personas imputadas separadamente y eso es exactamente lo que ustedes van a hacer. Nos vamos a olvidar del otro co-acusado y sencillamente vamos a estar viendo la prueba en cuando a Don Héctor. Espero que no haya alguna duda. ¿Tienen alguna duda? Vamos entonces a continuar."
Argumenta así que la expresión "ya uno salió, por lo tanto, lo que quiere decir es que ustedes van a hacer la misma evaluación en cuanto al que queda", tiene el efecto de llevar el mensaje al jurado que "si el otro se hizo culpable ellos van a hacer la misma evaluación con Héctor".
Resolvemos que tal expresión aislada del juez de instancia no tiene el alcance que le pretende adscribir el apelante y que, examinada la totalidad de tal instrucción, así como la instrucción final que sobre dicho extremo fue impartida al jurado sin mediar oposición del apelante, hace evidente que no se cometió error revocable. Como bien se ha expresado, el análisis y enjuiciamiento de las instrucciones tiene que ser integral. Pueblo v. Cepeda Rivera, 125 D.P.R. 132, 148 (1990). Sobre el particular, y según surge de la E.N.P. a las págs. 131-132, antes de que el jurado se retirara a deliberar, el juez de instancia le impartió la siguiente instrucción:

"En ese caso el co-acusado Edwin Rodríguez luego de haber comenzado el juicio se declaró culpable de todos los delitos [sic] que se le acusaban aceptando que participó en los hechos que se le imputaban. Esa decisión que tomó el Sr. Edwin Rodríguez fue una individual de su parte que no significa nada, ni tiene que ver absolutamente nada con el Sr. Héctor Ramos Rodríguez. Por el contrario, ustedes deben resolver de acuerdo con la apreciación de la prueba deforma independiente y separada. En virtud de ello deben apreciar y determinar la culpabilidad o inocencia de cada una de las personas incluidas en la acusación que en este caso ya ustedes han visto que no está en el juicio. El único que está en el juicio en estos momentos es Héctor y es [sic] cuanto a él que ustedes van a tomar la determinación."

Debemos aquí señalar de entrada que un examen integral de las instrucciones impartidas por el foro de instancia hace evidente que éste instruyó con adecuación sobre los derechos fundamentales del acusado, a saber; presunción de inocencia, obligación del fiscal de probar la culpabilidad del acusado más allá de duda razonable, el alcance del derecho del acusado a no declarar, así como las normas de evaluación de la pmeba. Tampoco son objeto de impugnación las instmcciones que fueron impartidas en relación con los elementos de los delitos imputados, y por los cuales resultó convicto el apelante, ni en tomo a la defensa por él levantada.
*852 Se limita así el apelante a cuestionar la negativa del foro de instancia a impartir las instrucciones especiales por él solicitadas en tomo a los dos extremos que son objeto de impugnación, para argumentar que aquéllas que fueron impartidas resultaron detrimentales a los derechos del apelante.
En cuanto a las instrucciones relacionadas con la alegación de culpabilidad del co-acusado y según ya indicado, no podemos adscribirle a la expresión aislada del juez de instancia en la cual el apelante predica su impugnación, el efecto y alcance que pretende imputarle. Contrario a lo por él argumentado, somos del criterio que la instrucción impugnada, considerada en su totalidad, comunica con total claridad que la decisión que tomó el co-acusado Edwin Rodríguez fue una individual de su parte y no significaba ni tiene nada que ver con el proceso que se estaba llevando a cabo en cuanto a Héctor Ramos Rodríguez, aquí apelante. Hizo también expresión el foro de instancia a los efectos de que el apelante formuló alegación de no culpabilidad para indicarles que eso es lo que habrá de ventilarse, "la prueba que tiene que desfilar el Sr. Fiscal, es la que ustedes van a evaluar para determinar sobre eso", reiterándoles que la prueba tenía que evaluarla en cuanto a cada una de las personas imputadas separadamente. En palabras del Juez al concluir tal instrucción, "[n]os vamos a olvidar del otro co-acusado y sencillamente vamos a estar viendo la prueba en cuanto a Don Héctor".
Tal instrucción cumple cabalmente con el propósito fundamental perseguido de desligar al apelante de tal acto volitivo del co-acusado al admitir los cargos contra él imputados. Ahora bien, toda duda se discipa al examinar la instrucción final que impartió el juez de instancia, la que desviste de todo mérito la argumentación del apelante. Según surge de la E.N.P., en sus instrucciones finales reiteró la juez de instancia que la decisión del Sr. Edwin Rodríguez al declararse culpable de todos los delitos que se le acusaban luego de haber comenzado el juicio, "fue una individual de su parte que no significa nada, ni tiene que ver absolutamente nada con el Sr. Héctor Ramos Rodríguez". Ello para instruirlos a continuación que, "por el contrario, ustedes deben resolver de acuerdo con la apreciación de la prueba deforma independiente y separada".
Evidentemente, tales instrucciones claras, precisas, consistentes y lógicas, se ajustan a derecho y subsanan cualquier efecto perjudicial que haya podido ocasionar la expresión aislada que invoca el apelante como fundamento de revocación.
Ahora bien, independientemente de lo antes indicado, es principio claro que un error en materia de instrucciones al jurado, ya sea de instrucción errónea o de negación de instrucción correcta, no acarrea revocación automática de una convicción. Pueblo v. Torres Rodríguez, 119 D.P.R. 730 (1987). Sólo acarrea revocación el error sustancial, que es aquél que tiene efecto decisivo en el resultado del caso, en el sentido de que el tribunal apelativo estima que de no haberse cometido el error, lo más probable es que el resultado hubiera sido distinto. Pueblo v. López Guzmán, 131 D.P.R. _ (1992), 92 J.T.S. 142, a las págs. 10059-10060; Pueblo v. Torres Rodríguez, supra, a la pág. 740. Tal no es la situación particular en el caso que nos ocupa donde la prueba, creída como fue por el jurado, resulta suficiente para establecer los elementos de los delitos por los cuales resultó convicto el apelante y las defensas presentadas, así como para establecer su culpabilidad fuera de duda razonable. Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986); Pueblo v. Bigio Pastrana, supra. Tampoco encontramos que la instrucción impugnada haya lesionado los derechos fundamentales del acusado apelante. Pueblo v. Ortiz Martínez, 116 D.P.R. 139, 151 (1985).
-B-
Finalmente, el apelante señala que la juez de instancia erró al impartir las instrucciones al jurado respecto al video y las fotografías que fueron admitidas en evidencia. Según expone el recurso, éste solicitó la siguiente instrucción especial:

"El video y fotografía de la víctima se admitieron únicamente con el propósito de ilustrar a las damas y caballeros del jurado sobre el lugar de los hechos y la presencia de la víctima. [C]on respecto a esta evidencia se les instruye que no deben dejarse impresionar por la misma."

El foro de instancia denegó tal solicitud y, según surge de la E.N.P., a la pág. 128, instruyó como sigue: ,

"[...] En este caso se han admitido en evidencia y se le va a proveer al jurado fotografías y un video 
*853
del área donde ocurrieron los hechos y de la víctima. Esto, únicamente con el propósito de ilustrar a los señores del jurado sobre el carácter y naturaleza de las heridas, manera y medio en que se ocasionó la muerte o para demostrar la proximidad del acusado a la víctima al ocurrir la muerte."

Tal instrucción corresponde a la instrucción propuesta por el Manual de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, 2da. ed. (1977), pág. 41, para el caso de fotografías de la víctima, lo que hace evidente la carencia de méritos del planteamiento del apelante. Basta con señalar que a dichas instrucciones las cobija una presunción de corrección, In re: Aprobación del Libro de Instrucciones al Jurádo para el Tribunal Superior de Puerto Rico, 104 D.P.R. 1067, que no puede ser impugnada en ausencia de demostración real de que en efecto, la instrucción es errónea. Pueblo v. Ortiz González, 111 D.P.R. 408, 410 (1981).
Así concluimos, luego de un análisis sereno e imparcial de las instrucciones que efectivamente transmitió el tribunal de instancia a los señores del jurado en el caso que nos ocupa, éste a la luz de la prueba que fuera desfilada en el mismo, que éstas se ajustan sustancialmente a derecho y no ocasionaron menoscabo alguno a los derechos fundamentales o sustanciales del apelante.
Por no haberse cometido los errores imputados y por tener la certeza moral de que los veredictos están ampliamente sostenidos por la prueba, se confirman las sentencias apeladas.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General